J. J. SMITH LUMBER Co., Appellant, v. SCOTT COUNTY GARBAGE REDUCING & FUEL Co. ET AL., Defendants, STROHBEHN & PICKLUM, E. J. BURK, O. P. FORBES, HENRY HEBBLIN, L. RITCHEY, Interveners, Appellants, MUELLER LUMBER Co., Garnishee, Appellee.

Garnishment: NOTICE TO PRINCIPAL DEFENDANT: JURISDICTION: DISMISSAL OF PROCEEDING. While it is true that no judgment against

a garnishee can be entered until the principal defendant has been served with notice of the garnishment as provided by the statute, still failure to give such notice will not authorize a discharge of the garnishee or dismissal of the proceedings; as the notice is not jurisdictional in the sense that the proceedings are void or nugatory until such notice is given.

Same: EXTENT OF GARNISHING CREDITOR'S RIGHTS. It is a general rule that a garnishing creditor has no greater right to the fund or property in the hands of the garnishee than the judgment defendant has, but he can not be placed in a worse condition than if the defendant himself were enforcing his claim. There are, however, exceptions to this rule, as where the garnishee holds property of the defendant under a fraudulent transfer or arrangement, and in such cases the rights of the garnishing creditor are not limited to the defendant's rights against the garnishee.

Same: RIGHTS OF GARNISHEE: SETOFF. The question of whether a garnishee holding property of the principal debtor can set off his own claims against the principal debtor depends upon whether he has any lien upon the property in his hands or right to its possession as security; and if he has mere possession without any right in or lien upon the property and the debtor has a present right to the possession which he can assert, the garnishee has no greater right to charge the property by way of setoff for a debt of his own than he would have if the goods had been taken into custody by an officer at the time of the attachment.

Sales: RESCISSION: INSOLVENCY: FRAUD: EVIDENCE. Mere insolvency of the buyer of goods at the time of the sale is not ground for rescinding the sale unless coupled with an intent never to pay for the same, or the natural and probable result of the buyer's act in obtaining the goods was to defraud the seller. In this action the garnishee sold and delivered lumber to the judgment defendant, and shortly thereafter went upon the premises of defendant and hauled the same away without the consent or knowledge of the defendant, crediting his account therewith. *Held,* that there was not sufficient evidence of insolvency to authorize rescission or to show any purpose to defraud creditors of the defendant.

Same: REPLEVIN: NATURE OF ACTION. The actions of replevin and detinue are for the recovery of specific personalty, and where the seller of goods which were not paid for retook the same, as in this case, crediting the account of the buyer with their value, and commingled the same with other like goods of his own and sold them as his own, the buyer can not maintain replevin or detinue but is limited to an action for conversion, or upon an implied contract to pay therefor.

Garnishment: LIABILITY OF GARNISHEE: SETOFF.  To charge a gar-
6  nishee he must either have actual possession of the judgment
    debtor's property or be indebted to the judgment defendant at
    the time the notice of garnishment is served; and where, as in
    this case, the garnishee did not have actual possession and could
    only be charged as a debtor of the defendant he was entitled as
    such to interpose as a setoff any claim which he might have
    against the debtor, and also as against the garnishing creditor.

*Appeal from Scott District Court.—*Hon. James W.
Bollinger, Judge.

Thursday, November 17, 1910.

Garnishment proceedings in which the Mueller Lum-
ber Company was garnished on a judgment held by plaintiff
against the Scott County Garbage Reducing & Fuel Com-
pany and others.  The trial court dismissed the garnishee,
and plaintiff and interveners appeal.—*Affirmed.*

*Helmick & Boudinot,* for appellant Smith Lumber Co.

*William Theophilus* and *Henry Thuenen,* for inter-
veners.

*Alfred C. Mueller,* for appellee.

Deemer, C. J.—Plaintiff and interveners obtained
their several judgments against the defendants the Scott
County Garbage Reducing & Fuel Company on September
15, 1908.  On the same day executions were issued which
were levied immediately by garnishing the Mueller Lumber
Company.  The garnishee appeared and denied all liability.
Issue was taken upon such denial, a jury waived, and the
case tried to the court upon the following agreed state-
ment of facts:

The parties admit that the garnishee sold and delivered

to the Scott County Garbage Reducing & Fuel Company lumber to the amount of $806.03, which lumber was received and accepted by said garbage company on July 20, 1906; that thereafter, on July 28, 1906, said garnishee, Mueller Lumber Company, went upon the property of said defendant garbage company and hauled away lumber formerly by it delivered, to the amount of $678.34, without the consent or permission or knowledge of the defendant garbage company and without any legal process, and the account of the said garbage company was credited to that amount. Said lumber has since been commingled with other lumber and sold by the Mueller Lumber Company and been converted by the Mueller Lumber Company to its own use. It is further stipulated that there has been ordered in this cause heretofore that the sheriff collect all the assets of said defendant garbage 'company, and that the same be applied in the order as provided in said decree, of record page 505, in Record 47. It is further agreed that the said decree of distribution of assets that may be collected may be modified in that $30 of Strohbehn & Picklum shall take precedence of Smith Lumber Company. That at the time the Mueller Lumber Company hauled away said lumber, the Scott County Garbage Reducing & Fuel Company, the principal defendant in said case, was insolvent, and such taking and appropriation of the said lumber was never ratified by the said garbage company.

The trial resulted in an order finding no indebtedness from the garnishee to the principal debtor, dismissing the garnishment, and discharging the garnishee. We are asked on this record to reverse the judgment on the theory that according to the agreed statement of facts garnishee was a wrongdoer in taking the property of the principal debtor, and that it either holds the property so taken, or the proceeds thereof, for the principal debtor, and that it can not offset its claim for the purchase price against its liability to the principal debtor in this proceeding, but, being a wrongdoer, must respond to the judgment creditor. Appellee disputes this proposition, claims that the garnishee has the right to rescind the sale of the goods to the prin-

cipal debtor on the ground of fraud; that it did rescind and is entitled to hold the goods and the proceeds. It also says that, in any event, as the principal debtor is also indebted to it in a larger sum than the value of the property taken, plaintiff and intervener acquired nothing by their garnishment. It further claims that no notice has been served upon the principal debtor, and that for this reason neither the district nor this court has any jurisdiction of the garnishment proceedings.

I. We shall dispose of the jurisdictional question. Section 3947 of the Code Supplement of 1907 provides that "no judgment shall be entered in the garnishment proceedings until the principal defendant shall have had ten deys notice of the garnishment proceedings." Under this provision it is clear, of course, that without notice to the principal defendant no judgment can be entered against the garnishee; but it is equally clear, we think, that lack of such notice is no reason for discharging the garnishee or dismissing the proceedings. In other words, the notice is not jurisdictional in the sense that the proceedings are void, or nugatory until such notice is given. The garnishee can not ordinarily obtain a discharge because no notice is given to the principal defendant. He may insist, however, that no judgment can properly be rendered against him until such notice is given. This proposition does not seem to have been raised in the district court, and there is really nothing in the record to show whether or not such notice was given. None of the cases relied upon by appellee upon this proposition are in point. See *Schaller v. Marker,* 136 Iowa, 575. As supporting our conclusion, see *Association v. Fitch,* 142 Iowa, 329.

II. The general rule as to garnishment is that the plaintiff in garnishment stands in the shoes of the original defendant, and that he can have no greater rights than the judgment defendant, and the garnishee is not to be

*Margin note:* 1. GARNISHMENT: notice to principal defendant: jurisdiction: dismissal of proceeding.

placed in any worse condition than if the defendant him-
self were enforcing his claim. *Streeter v.
*Gleason,* 120 Iowa, 703; *Des Moines v.
Cooper,* 93 Iowa, 654; *Smith v. Clarke,* 9
Iowa, 244, and cases cited. To this general rule there are
some exceptions, as *Stove Co. v. Shedd,* 82 Iowa, 540;
*Citizens Bank v. Fuel Co.,* 89 Iowa, 618; *Thomas v.
McDonald,* 102 Iowa, 564; *Jordan v. Crickett,* 123 Iowa,
576. In the *Citizens' Bank* case, *supra,* it is said:
"Now, while it is the general rule that the garnishee's
liability to the defendant is the measure of his lia-
bility to a creditor of the defendant, yet such rule is
by no means universal. The law is that, when the
garnishee holds property of the defendant under a fraudu-
lent transfer or arrangement, the right of the plaintiff to
hold the garnishee liable is not limited to the defendant's
right against the garnishee." In the *Kenosha Stove* case,
*supra,* the court used this language: "As between Shedd,
Billings, and Bixby, they could not allege that the trans-
action was fraudulent, and Shedd can not shield himself
from liability by pleading his own fraud. He would not
be permitted to hold property on the ground that he com-
mitted larceny to acquire it; nor will he be permitted to
escape liability in this case on the grounds of his fraudu-
lent acts in concert with Billings and Bixby." And in the
*Thomas* case, *supra,* we said: "She (garnishee) received
the money, his property, ostensibly to satisfy the judgment,
and the law will not permit him to recover anything she
may have received in carrying out their common design to
cheat his creditors. But the creditors may follow his prop-
erty—and money is property, even when in the hands of
third parties—and insist upon its proper application to the
satisfaction of his debts."

Appellants rely chiefly, however, upon a rule announced
in *Allen v. Hall,* 5 Metc. (Mass.) 263. In that case "A.
attached the goods of B. for his debtor, and caused them

*2. Same: extent of garnishing creditor's rights.*

to be sold at auction on the writ, without conforming to
the provisions of the law, and himself became the purchaser
of the goods and took them into his possession. Held, in
a process of foreign attachment (garnishment) in which A
was summoned as trustee (garnishee) of B., that he could
not set off the debt due him from B. against the value of
said goods, but that he was chargeable as trustee (gar-
nishee) of B. to the amount of the value of the goods."
Chief Justice Shaw wrote the opinion in that case, and,
among other things said:

The great question then, the only question, is whether
he owes the principal debtor anything; and, if it appears
that he does, he is held liable to pay it to his creditor's
creditor, instead of paying it to the creditor himself. It
is unnecessary here to consider the various questions which
may arise, as to the nature of such debts, whether absolute
or contingent, and the nature of such contingency; whether,
if uncertain at the time, it can be made certain at a future
time, by sales, collections of money or other proceedings,
showing that in point of fact the trustee was a debtor to
the principal at the time of the attachment. In such cases,
although the facts are subsequently disclosed, and the ac-
counts subsequently adjusted, in order to charge the trust-
tee, the result must show that the trustee was a debtor to
the principal at the time of the attachment. This distinc-
tion between the two classes of cases will go far to show
in what cases the trustee may or may not set off such
claims as he may have against the principal debtor, and
to reconcile what may, without discrimination, be deemed
to be conflicting authorities. On the provision in which
the trustee is charged as a debtor, it is very obvious that,
as he is a mere third party, called in to pay his debt
in a manner different from that in which he was bound to
pay it, and in which his own rights are not drawn into
controversy, he ought not to be placed in a worse situation
than he would be if he were called to make the settlement
with his creditor. The balance only, after all just al-
lowances, is the sum for which he ought to be held. He
shall therefore have the benefit of a set-off, legal or equi-
table, in his own right, or in the right of those with whom

he is privy, and in whose favor the debt is claimed to be due from the trustee could, in his hands, be made available by way of set-off in any of the modes provided by law, *Hathaway v. Russell,* 16 Mass. 473; *Picquet v. Swan,* 4 Mason, 443 (Fed. Cas. No. 11,133).

But where the trustee has goods in his custody, the property of the principal defendant, and in their nature liable to be attached by the process of law, the question

3. SAME: rights of garnishee: set-off.

whether the trustee has any right to set off claims of his own must depend upon the fact whether he has any lien, legal or equitable, upon such goods, or any right, as against the owner, as whose property they are attached, by contract, by custom, or otherwise, to hold the goods, or to retain the possession of them, in security of some debt or claim of his own. If the party, who is summoned as trustee, has a mere naked possession of them, in security of some debt or claim of his own; if the party, who is summoned as trustee, has a mere naked possession of the goods without any special property or lien; if the principal debtor is the owner and has a present right of possession, so that he might lawfully take them out of the custody, or authorize another to take them out of the custody, of the present holder—they would be liable to be attached as the property of the general owner, by an officer, under the common process of attachment, if he could have access to them, and no right of the trustee would be violated. But if the officer can not have access to the goods, so as to take them into custody, if they are secreted by the trustee, or if the trustee sets up pretended claims and rights of possession, so that the creditor and officer can not safely take them out of the custody of the trustee and require the answer and disclosure of the trustee, as to the grounds of his claim to the property or possession, then he may be summoned as trustee; and if it shall subsequently appear, on his disclosures, that he had only such naked possession, without any lien or right of possession, then the goods stand charged in his hands, till judgment and execution, and he has no greater right to charge these goods with a debt of his own, by way of set-off, than he would have had if the goods had been taken into custody by the officer at the time of the attachment. This, we

think, is the result of the laws on this subject. *Allen v. Megguire,* 15 Mass. 490; *Swett v. Brown,* 5 Pick. 178; *Brewer v. Pitkin,* 11 Pick. 298. . . .

The respondent obtained the bare custody of the goods, without lawful possession or right of possession. If the respondent could have the goods in security of his original debt against Tufts, or set off that debt, under this process, he would in effect get possession of his debtor's goods, under color of legal process, without conforming to the requisition of law, and thus avail himself of such unauthorized possession, to the same extent as if he had taken and sold the goods on execution in conformity to law— which he can not do.

The distinction pointed out by the learned Chief Justice is clear and should be preserved in the instant case.

The agreed statement of facts is meager as to many of the vital propositions. It does, however, negative any thought of fraud in the relation between the judgment debtor and the garnishee. That is to say, there is no showing either directly or indirectly by inference that in what was done between them there was any purpose to cheat or defraud creditors of the judgment defendant. It appears that the garnishee attempted on its motion to rescind the sale of its lumber to the judgment defendant because of the insolvency and fraud of the purchaser. But it does not appear, except by inference, that the purchaser was insolvent when the goods were sold. The sale was made July 20, 1906, and the attempt at rescission was made on the 28th of the same month. The judgment defendant did not consent to the rescission and never ratified the same. Now, it may be that the claimed rescission was so close to the time of sale that insolvency of the purchaser at the time of sale would be inferred; but mere insolvency of the buyer at the time of sale is not ground for rescission. *Houghtaling v. Hills,* 59 Iowa, 287; *Oswego Co. v. Lendrum,* 57 Iowa, 573; *Am. Ex. Co. v. Smith,* 57 Iowa, 242; *Franklin Co.*

*4. SALES: recission: insolvency: fraud: evidence.*

*v. Collier,* 89 Iowa, 69. If coupled with an intent on the part of the purchaser never to pay for the goods, or if the natural and probable result of his act is to defraud the seller, then rescission may be had. *Cox Shoe Co. v. Adams,* 105 Iowa, 402; *Deere v. Morgan,* 114 Iowa, 287; *Phelps v. Samson,* 113 Iowa, 145; *Seeley v. Seeley Co.,* 130 Iowa, 626; *Starr v. Stevenson,* 91 Iowa, 684.

We do not think that the record shows sufficient ground for a rescission of the sale as between the garnishee and the judgment defendant, and, if the garnishee still held the goods, we should have no doubt of the right of plaintiff to charge the garnishee with the goods or their value. But it appears that the garnishee took the goods on July 28, 1906, credited the value thereof to the account of the judgment debtor, commingled the lumber with other goods, and sold and converted the same to its own use. The garnishments in question were run more than two years after the alleged conversion. If the garnishment had not been run, and the judgment debtor had attempted to enforce its claim against the garnishee, it would have brought an action of tort for the conversion of the goods, or, waiving the tort, might have brought action on an implied promise to pay for the same. The goods themselves had been disposed of, and the judgment debtor could not have brought either an action of replevin or of detinue for the recovery of the same. Both the latter actions are for the recovery of personal chattels in specie. In an action of replevin, and doubtless in detinue, the defendant in the action can not interpose a counterclaim. See Code 1897, section 4164. The reason for this is that it would allow a creditor to forcibly seize the property of his debtor without process and then plead the indebtedness as an offset to an action to recover it back. *Palmer v. Palmer,* 90 Iowa, 17. But one can not maintain an action of replevin where he shows an actual conversion of the property. *Woodling v. Mitchell,*

5. SAME: replevin: nature of action.

127 Iowa, 262. Here the agreed statement of facts shows· an actual conversion by the garnishee, and that neither the action of replevin nor detinue could have been brought against the garnishee for the recovery of the specific goods. In an action brought for the value of the goods, as in conversion, or upon as implied promise to pay the value thereof, the garnishee as defendant might have pleaded by way of setoff its account against the judgment defendant, had he been the plaintiff in the action. Code, section 3570, and cases cited in annotations. As further supporting these views, see *Laughlin v. Main*, 63 Iowa, 580; *Porter v. Dalhoff*, 59 Iowa, 459.

One other thought in this connection is quite conclusive of plaintiff's rights. In order to charge the garnishee, he must either have actual possesion of the judg-

6. Garnishment: liability of garnishee: setoff.

ment debtor's property, or be indebted to the judgment defendant at the time the notice of garnishment is served. Code, sections 3897, 3935; *Smalley v. Miller*, 71 Iowa, 90. It conclusively appears that the garnishee in this case did not have actual possession of the property, and . it could only be charged as a debtor of the judgment defendant. If sought to be so charged, the garnishee might interpose its account against the judgment debtor as a setoff or a counterclaim, and, granted that it could do this, it may do the same when it is sought to be held as garnishee. These conclusions render it unnecessary to determine whether a tort-feasor is subject to garnishment; for, conceding that he is, under our liberal provisions as to counterclaim, he could, had he been sued by the judgment debtor, have interposed a counterclaim for the amount owing him by the judgment debtor. Nothing herein decided runs counter to the views expressed by Justice Shaw in the case heretofore cited. In that case the garnishee held actual possession of the property which he had taken wrongfully, and he was · unable to show any lien upon the goods. Moreover, in

an action for the recovery of the goods, he could not have interposed his account as a counterclaim. So much depends upon the statutes of a given state that cases from other jurisdictions are of little help. The general rule regarding setoff or counterclaim is stated in Shinn on Attachment & Garnishment, section 624, as follows:

The policy of the law is that the garnishee, being an indifferent and sometimes an unwilling party to the litigation between the plaintiff and defendant, shall not be disturbed in his rights. As above stated, he is permitted to interpose all the defenses which he can show against the claim of the principal defendant. The one which he most frequently desires to interpose is a claim of a setoff. After much litigation upon the subject, it is now a well-established rule that the garnishee will be allowed to claim in his answer and retain for himself any demand allowed, either by the common law or by statute, had the action been brought by the principal defendant himself, or if the proceedings had been wholly between the principal defendant and himself. . . . The demands which he may deduct from the liability to the defendant are not confined to matters which are technically termed 'setoff.' He is further entitled to show and retain whatever he might have demanded of the defendant by way of 'recoupment' or any like defense arising upon their contract relation, even though it be a penalty arising upon a stipulation in such contract.

These statements are well fortified by the authorities cited in support of the text, among them: *Clinton Bank v. Studemann,* 74 Iowa, 104. See, also, Drake on Attachments (7th Ed.) sections 689a, 690.

With the distinction in mind between cases where a garnishee has the actual possession of the property of the judgment debtor and cases where he is sought to be charged as a debtor of the judgment defendant, the case now in hand is not difficult of solution.

The trial court was right in dismissing the writ and

discharging the garnishee, and the judgment must be, and it is, *affirmed.*