ROBERT DICKINSON, Appellant, v. IRA D. DAVIS, Defendant and Appellee; CENTRAL STATE BANK, L. M. DARLING and VICTORIA C. DARLING, Garnishees, Appellees.

Garnishment: LIABILITY OF GARNISHEE. The liability of a garnishee
1    is no greater than that of the judgment debtor: and in the absence of some fault on his part he will not be put in a position where he may be compelled to pay the debt twice.

Same: PROPERTY SUBJECT TO GARNISHMENT. In the instant case the
2    garnishee bank was not liable as such because holding a note of the judgment debtor as purchaser and indorsee; as the judgment debtor was primarily liable on the note and would have no right in it until he paid it, and the judgment creditors' rights were only those of the judgment debtor.

Same: LIABILITY OF GARNISHEE. A garnishee is not liable for indebt-
3    edness due the judgment debtor, where a note evidencing the indebtedness had been transferred by the judgment debtor to

another as collateral security; as the garnishee would not be owing anything until the note was transferred back to him.

Same.   Where a bank as garnishee held collateral of the judgment
4     debtor to secure an indebtedness, the plaintiff was entitled only to a contingent judgment against the bank, either giving the right to the collaterals after paying the bank's claim, or providing that the bank should collect the collaterals and, after deducting its own claim, pay the balance to the plaintiff.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

TUESDAY, MARCH 17, 1914.

THIS is a garnishment proceeding, which resulted in a judgment discharging the garnishees, and plaintiff appeals. —*Reversed* and *Remanded.*

*Henry & Henry,* for appellant.

*Brown & Brammer,* for appellees.

No appearance for Davis, defendant and appellee.

DEEMER, J.—Plaintiff held a judgment against Ira D. Davis, and on November 25th he sued out an execution on the judgment, and caused the Central State Bank and the Darlings, husband and wife, to be garnished as debtors to or as holders of property of the said Davis, subject to execution. The bank and the other garnishees filed answers, and upon the issues tendered thereby the case was tried to the court, resulting in a judgment practically discharging all the garnishees, and the plaintiff appeals.

The trial court made a finding of facts, from which we extract the following:

That at the time said garnishment was served upon said bank the defendant Ira D. Davis was indebted to said Central

State Bank in the sum of $4,224.66, with interest thereon at the rate of 8 per cent. per annum from April 8, 1912, upon his one certain promissory note in said sum, bearing date April 8, 1912, due ninety days thereafter, payable to said bank. Said note of $4,224.66 being a renewal of three prior notes of defendant Davis held by said bank, to wit: One note of $3,500, dated August 9, 1911, one note of $500, of date November 2, 1911, and one note of $200, of date February 8, 1912, and interest on said notes.

That the said defendant Ira D. Davis was also indebted to the said bank in the sum of $561, with interest at the rate of 8 per cent. per annum from October 17, 1912, on one certain promissory note in writing signed by the said Ira D. Davis and Anna E. Davis, his wife, dated October 17, 1912, due in 90 days thereafter, payable to one O. P. Herrold, and by him indorsed in blank and transferred to said bank October 22, 1912.

That said bank, on August 9, 1911, at the time it loaned said Davis said sum of $3,500, received from defendant Davis as a part of the same transaction the following described collateral, which it continued to hold as collateral for said renewal note of $4,224.66, to wit:

(a)   Note of $4,510.63, signed by the said Victoria C. Darling and Loren M. Darling, bearing date May 3, 1911, due December 8, 1911, with interest at 8 per cent. from date, payable to the order of said Ira D. Davis, and by him indorsed in blank, and delivered to said bank. That said note was secured by a real estate mortgage upon certain premises in the city of Des Moines, Iowa, described in the answer of Central State Bank, garnishee, which said premises are the homestead of garnishees Darling; said note and mortgage having been given for part of the purchase of said property.

(b)   Also said bank held as additional collateral security to the payment of said note of Ira D. Davis of $4,224.66, and of said prior notes two 5 per cent. bonds of the Iowa Loan & Trust Company for $500 each, and one 5 per cent. bond for $1,000 issued by said company, registered in the name of said Ira D. Davis, and all due April 1, 1913. That there was $25 interest due on each said $500 bonds, and $50 interest due on said $1,000 bond, on April 1, 1913, and that no part of the principal or said interest have been paid.

That said note of the said defendant Ira D. Davis pay-

able to said bank, for $4,224.66 is a collateral note, and contains the following stipulation: 'Having deposited herewith a collateral security note and mortgage Victoria C. Darling, $4,510.63, dated May 3, 1911, and debentures of Ia. Loan & Tr. Co. $2,000.00 and tax certificates, with authority to sell the same, or any collaterals substituted for or added to the above, without notice, either at public or private sale, or otherwise, at option of the said Central State Bank, on the nonperformance of this promise, said bank applying net proceeds to the payment of this note, and accounting for the surplus, if any; and it is hereby agreed that such surplus, or any excess of collaterals, upon this note shall be applicable to any other note or claim against ―――― held by said bank. In case of depreciation in the market of any security pledged for this loan, I hereby agree to deposit on demand a further amount of collaterals, so that the market value shall always be at least ten per cent. more than the amount of this note; and, failing to deposit such additional security, this note shall be deemed to be due and payable forthwith, anything hereinbefore expressed to the contrary notwithstanding, and the holder or holders may immediately reimburse themselves by the sale of the security.'

And that the said bonds, aggregating $2,000, and said Darling note and mortgage, at the time the said garnishment was served on said bank, were properly held by said bank as collateral security, not only for the payment of said note of $4,224.66 of defendant Davis, but also for the payment of said note of $561 of the said defendant Davis, and his said wife, payable to said O. P. Herrold, and transferred to said bank on October 22, 1912.

The court further finds that at the time said bank was served with garnishment no part of said note of $4,224.66 or of said note of $561 of the defendant Davis, either of principal or interest, had been paid, and that no part of said Darling note of $4,510.63. had been paid so far as appeared by any written indorsement on the back of said note, or so far as said bank had knowledge.

The court further finds that, notwithstanding no indorsements of payment were made upon said Darling note by the said defendant Davis, that nevertheless the said Victoria C. Darling and Loren M. Darling made payments upon said note in the aggregate sum of $930, which said payments were made

to the said Davis, and not to said bank, and are as follows:
Year 1911: May 3d, $450; June 2d, $50; July 20th, $15; Au-
gust 2d, $25; November 11th, $175. Year 1912: January 9th,
$20; April 13th, $75; April 22d, $25; June 20th, $50; July
20th, $15; August 10th, $10; November 29th, $20.

The court further finds that, as against the plaintiff, the
defendant, the intervener, the garnishees Darling, and all par-
ties hereto, the said Central State Bank, at the time of said
garnishment, to wit, November 25, 1912, had a first and para-
mount lien upon said bonds aggregating $2,000, and upon said
Darling note of $4,510.63, and mortgage securing the same for
the payment of both said notes of defendant Davis, one for
$4,224.66, and the other for $561.

The court further finds that, since said garnishment was
made on said bank, the garnishees Darling made payments on
their said note as follows: $1,000 February 24, 1913, and $175
March 28, 1913—and that said payments are indorsed upon
said Darling note, and also indorsed upon said Davis note of
$4,510.63, as proper credits, thereby reducing the indebted-
ness of said Darlings to said bank to the sum of $1,175.

The court further finds that there is now due and owing
the Central State Bank from Ira D. Davis the sum of $3,365
on his said note of $4,224.66, and the further sum of $584.31
on his said note of $561, and that there is due on both said
notes to said bank on this date the total sum of principal and
interest of $3,949.91.

The court further finds that said bonds aggregating $2,000
of the Iowa Loan & Trust Company are worth their full face
and interest, and that, even if the garnishees Darling be al-
lowed their said credits aggregating $930 on their said note,
which was made to defendant Davis, instead of to said bank,
that still the said bank will have sufficient security to discharge
the full sum due from said Davis of his said two notes to said
bank, and that therefore, as against the intervener King, and
as against the plaintiff, and as against said bank, said credits
should be allowed and indorsed upon said note, and that the
plaintiff could not by said garnishment process secure any
greater rights in respect of said Darling note than were held
by the defendant Davis.

On these findings the following judgment was rendered:

It is therefore ordered, adjudged, considered, and de-
creed that the garnishees Darling are hereby allowed credits

upon their said note aggregating $930 as of the dates of payment hereinbefore set out, and the further sum of $1,000 paid on said note as above stated on February 24, 1913, and $175 paid on said note March 28, 1913, and that upon payment of the balance due on said note of said garnishees, to wit, $2,-983.74, with interest thereon at the rate of 8 per cent. per annum from this date, that the said bank shall surrender to said garnishees Darling their said notes and mortgage on their said homestead, and cancel said mortgage of record, and that said bank shall apply the proceeds of said Darling note to the discharge of said two notes of defendant Davis, and that upon payment of their said note by said garnishees Darling they shall be and are, without any further order of this court, discharged as garnishees, and said bank be, and it is, discharged as garnishee in respect of said Darling note, without any further order of this court, to all of which the plaintiff and the intervener King at the time duly excepted.

The exception of the plaintiff only extends to the following matters:

First.   To the conclusion that the garnishees Darling are entitled to a surrender and satisfaction of their note and mortgage upon payment of $2,983.74, instead of $3,949.91; the difference being the amount paid by Darling to the defendant Davis, with interest.

Second.   To the failure to hold that the bank shall account to the plaintiff for such portion of the $2,983.74, found due it, as represents the $561 note and interest, being the sum of $584.31, or.shall deliver up said note to plaintiff for collection against O. P. Herrold, the indorser thereof.

The court directs that no satisfaction of the Darling note and mortgage be made by the bank until after five days from the entry of this order, during which time the plaintiff may perfect its appeal from this order by giving notice as required by law, and by filing a supersedeas bond in the sum of $1,000.

These excerpts from the record show the real questions involved.   They relate to the $930 payment made by the

Darlings to Davis after the transfer of the notes as collateral to the bank, and to the $561 note executed by Davis and wife to Herrold, and by him (Herrold) indorsed to the bank. Neither the liability of the bank nor of the Darlings, as garnishees, to plaintiff is any greater than the liability they would be under were Davis calling upon them to respond under the same state of facts. This is fundamental law, supported by the following, among other, cases; *Streeter v. Gleason*, 120 Iowa, 703; *Steltzer v. Condon*, 139 Iowa, 754; *Packer v. Crary*, 121 Iowa, 388; *Smith v. Clarke*, 9 Iowa, 241; *Smith Lumber Co. v. Garbage Co.*, 149 Iowa, 272. And a garnishee will not, in the absence of some fault on his part, be put in such position as to be compelled to pay the debt twice. *Walters v. Insurance Co.*, 1 Iowa, 404; *Williams v. Housel*, 2 Iowa, 154; *Burton v. Dist. Twp.*, 11 Iowa, 166; *Smith Co. v. Garbage Co.*, 149 Iowa, 272.

1. GARNISHMENT: liability of garnishee.

As to the $561 note: This was made by Davis and wife to Herrold, and sold and indorsed by the latter to the bank; the bank paying therefor the sum of $561. Whether the purchase price was paid to Herrold, the indorser, or to Davis does not appear. Herrold's liability on the note is simply that of an indorser, and it is not a primary one. The bank claims to hold all the collaterals it theretofore received from Davis as collateral to this note pursuant to the stipulation quoted in the main note. Whether that be true or not (and, of its right to hold the prior collaterals as security for the note, there is some doubt), the bank advanced the purchase price of the note to either Herrold or Davis, and until this is returned neither is entitled to the note, or to any relief against the bank. The bank purchased the paper, and until it is reimbursed Davis has no claim to the note, and as it is his primary obligation, he cannot insist that the indorser is the principal debtor, and have a return of either the note or of the amount thereof, until he pays his debt, so that in the long run it is entirely immaterial whether the bank has any claim to it as collateral security or not. If it insists

2. SAME: property subject to garnishment.

on any such claim, then it is entitled to charge to the Davis account the amount paid by it for the note, so that, no matter which theory be adopted, the bank cannot be held as garnishee because of any indebtedness to Davis, or of holding any property of his because of the purchase of the $561 note.

II.   As to the $930 payment made by the Darlings to Davis:  Davis was indebted to the bank at and before the garnishments were run in the sum of $4,224.66, with interest at 8 per cent thereon from April 8, 1912, saying nothing now of the indebtedness on the $561 note.  It held as collateral security for this some debenture bonds of the Iowa Loan & Trust Company, amounting to the sum of $2,000, not counting interest, and a note signed by Victoria C. Darling and husband for $4,510.63, bearing date May 3, 1911, with interest at 8 per cent from date, payable to Ira D. Davis, and by him indorsed to the bank before maturity, which note was secured by a real estate mortgage on the homestead of the Darlings.

After the indorsement of the note to the bank, and before the garnishment was run, the Darlings paid to Davis the sum of $910 upon their note; but the amount of these payments was not indorsed upon the note, because it was held by the bank as collateral security; and after the garnishment, and before trial, they paid to him (Davis) the sum of $1,185, all but $20 of which was indorsed upon their note, and also credited upon the Davis note to the bank.

One King intervened in the case, and claimed that he owned the two debenture bonds.  The disposition made of this intervening petition will appear from the decree already quoted.

When the Darlings were advised of the indorsement of their notes as collateral to the bank does not appear.  They made their payments to the payee of the note in order to clear their homestead of its incumbrance, and have no claim against Davis, unless it be because of their negligence in paying the wrong party, and by reason thereof are forced to pay

it again to the bank. In that event they might have a claim against Davis because of having to pay it twice. As the matter now stands, they could not, at the time of the garnishment, or since, have enforced any claim against Davis on account of the payment of their obligations.

The bank was entitled to hold all its collaterals until the Davis note was paid, and in no event would Davis be entitled to anything until his obligations to the bank were paid and satisfied. In that event, if any collaterals which he had deposited remained in the hands of the bank, he (Davis) was entitled to the return thereof, and by the garnishment process plaintiff would have the same right.

Because of the fact that the court did not dispose of the King intervention, we have some difficulty in disposing of the case, for the record does not contain any of the testimony relating to the issue tendered by this petition of intervention. It is quite clear, upon the record as it stands, that the Darlings should not be held, save it be on the theory of a contingent liability because they paid their notes to the wrong party.

As to the bank: Davis owed the bank at the time of the garnishment approximately $4,431.20. The bank held as collateral at that time debenture bonds amounting, with interest, to approximately $2,000, no interest to speak of being due at that time, and the notes of the Darlings, of $4,510.63, upon which payments amounting to $540 had been paid to Davis before the transfer thereof, leaving a balance due, including interest, of approximately $4,466.51. After the transfer, and before the garnishment, $370 was paid by the Darlings to Davis, which was not credited upon the notes. And after the garnishment, $20 was paid to Davis, which was not credited, and the further sum of $1,175 was paid by the Darlings, which was indorsed, not only upon their notes, but also upon the Davis notes. At the date of the garnishment the debt due the bank from Davis, not counting the $561 note, was $4,431.20, and the amount of the collaterals held by it, consisting of the

Darling note and the debenture bonds, was $6,466.51. If the payments made by the Darlings after the indorsement of the note to the bank, and before garnishment, be deducted, although not credited upon the notes, this would reduce the collaterals by the sum of $370, leaving a balance of $6,096.51. And if the payment made after garnishment, not credited on the note, be also subtracted, it will leave the sum of $6,076.51.

The payments made by the Darlings during the year 1913 of $1,175 were indorsed upon Davis' note, reducing the amount due thereon, not counting interest, to $3,256.20; but the collaterals were also reduced by the same amount, or to the sum of approximately $4,901.51, or $4,921.51, depending upon whether the credit of $20 paid November 29, 1912, be allowed. So that the net amount of the collaterals held by the bank, including the debentures, would be in the one case $4,921.51, or in the other $4,901.51, and the approximate amount of the indebtedness of Davis which these collaterals were made to secure would be $3,256.20; the excess being in the one case $1,665.31, and in the other $1,645.31. Until it is definitely determined whether the debenture bonds belonged to King, the intervener, or were properly held by the bank as collateral, there is no way whereby to determine the contingent liability of the bank because of its holding collaterals belonging to Davis as security for an obligation from him to the bank. In this connection we eliminate entirely the $561 note. That was purchased from the payee, Herrold, and the bank paid Herrold for it. Davis did not deposit it as collateral, for it was his own note, and should not be taken into account in this transaction. If it be considered at all, the bank should be credited with the amount it paid for the note, and the amount charged to Davis' account, and charged with the face of the note as if collected; and, as one offsets the other, it is clear that this note should be eliminated for present purposes. The stipulation in the Davis note, given to the bank, from which we have quoted, evidently does not include Davis' own note to a third party, from whom the bank

purchased the note, and, if it did, the bank should charge as against it the amount it paid for the note.

With these facts in mind, it is difficult to understand the order made by the trial court.

As to the Darlings: They paid on their note to Davis $1,175, which was credited both on their note and on the Davis note. They paid to Davis, before the indorsement of 3. SAME: liability the note by Davis to the bank as collateral, the of garnishee. sum of $540, and after the indorsement they paid Davis, before the garnishment, $370, and after the garnishment, $20, none of which items were credited upon their notes. They also paid, after the garnishment, the sum of $1,175, which was credited both on their notes and upon the Davis note, held by the bank. Under this theory they would not be owing Davis anything at any time until the notes were transferred back to Davis by the bank, and their liability to the judgment plaintiff would in no case be greater than their liability to Davis. As against him they would be entitled to all amounts paid him, even were the notes then held by another as collateral security. If they were sued by the bank, their liability might have been greater than to Davis because of their payment of part of the amount to the wrong party. *Steltzer v. Condon*, 139 Iowa, 754; *Smith Co. v. Garbage Co.*, 149 Iowa, 272. If they were made to pay their notes, or any part thereof, twice by reason of these payments, Davis would then be owing them, instead of their owing Davis.

As to the bank: It has and had a claim against Davis, and also held some of his property as collateral security for the amount of this indebtedness. When Davis paid his obligation 4. SAME. to the bank, he was entitled to the return of his securities, and in such event the bank would be holding his property, and would be liable therefor to him. If it made its claim out of part of these securities, the remainder would have to be returned to Davis, for its was his property. At the time of the garnishment neither event had transpired; but the bank was holding Davis' property as

security for its indebtedness. Whether this property so held amounted to more than this indebtedness could not accurately be told until the amount of the collaterals was ascertained in some manner, and the amount of Davis' indebtedness to them fixed.

The first step, then, was to determine whether these debenture bonds belonged to the intervener or were properly held by the bank as collateral security for Davis' account. This finding was never made by the trial court, and we have no record from which to determine that question. If they belonged to King, and the bank had no right thereto as collateral from Davis, then, according to the figures we have made, the bank does not hold more of Davis' property as collateral security than it is entitled to. If, on the other hand, it be found that the bank rightly holds the debenture bonds, its collaterals largely exceed Davis' indebtedness, and to the amount thereof the judgment debtor should have a contingent judgment against the bank, either giving it the right to the collaterals after paying the amount of the bank's claim, or providing that the bank should collect the amount due on the collaterals, and, after extinguishing its own debt, pay the remainder over to the judgment plaintiff.

As the case must, in any event, be retried, we may here indicate our views as to the method of computation. All payments made by the Darlings to Davis before the assignment of the note as collateral, amounting to, under this record, $540, and all payments made by the Darlings to Davis after the garnishment, which were credited on both the Darling and the Davis notes, amounting to $1,175, should be allowed to the bank absolutely. As to the other payments made by the Darlings to Davis after the indorsement of their note to the bank, and after the garnishment, for which no credit has been given to Davis on his obligation to the bank, amounting in the aggregate to $390, this is nothing more than a chose in action held by the bank against the Darlings, for which the bank would not be liable to Davis, because Davis got all except $20

before the garnishment, and, in the absence of some proof of fraud or collusion or unfair dealing, the bank would not be liable as garnishee because, save as to the one item, the amounts were all paid by the Darlings to Davis before the garnishment was run. It is not enough that the garnishee might have collected these amounts from Davis, or from the Darlings, by reason of being a holder of the note in due course, and before maturity. It is a question of its liability to Davis, and as garnishee it cannot ordinarily be held to a greater liability than it was under to the judgment debtor. If the record showed any fraud or collusion between the parties, the case might be different. As there is no such proof in this case, we need not further elaborate the point.

Neither the Darlings nor the bank should have been absolutely discharged. Their liability, whether absolute or conditional, can only be determined after a further hearing. The Darlings are indebted to either Davis or the bank upon the note they gave Davis, and primarily their liability is to Davis for the amount due on their notes, after giving them credit with all amounts paid by them to Davis, unless fraud, conspiracy, or collusion be shown under proper issues.

The bank holds property belonging to Davis, either the Darling notes and mortgage, or the debenture bonds, or both, but as security for Davis' indebtedness to it. When this indebtedness is paid, Davis is entitled to the return of his collaterals; but he is not entitled to any credit on his notes to the bank for the amount he collected from the Darlings after his assignment thereof to the bank, unless there be proof of fraud or collusion, and an intent to defraud the creditors of Davis, nor should the bank be charged with the amounts paid by the Darlings to Davis, in the absence of such proof. In other words, the judgment finally rendered should protect the bank to the amount of its indebtedness against Davis, and it should be held to account for the securities it received from Davis, and to which, but for the garnishment, he would have been entitled. As he (Davis) received the

money from the Darlings without any fraud or collusion between him and the bank, so far as shown, he would not be entitled to recover from the bank in an action brought by him for money which he himself collected from the Darlings, and failed or refused to turn over to the bank.

The Herrold note is, as we think, entirely out of the case. There never was any authority from anybody to pay that note out of either the debentures or the Darling note. It was an entirely independent transaction, and the bank purchased it from either Herrold or Davis, and paid its money therefor. The matter of the collaterals for other obligations of Davis was not mentioned, and the bank purchased upon the financial ability of the indorser, Herrold. We have said enough to indicate our views, and it follows that the case must be reversed and remanded for a retrial and a judgment in harmony with this opinion.—*Reversed* and *Remanded*.

LADD, C. J. and GAYNOR and WITHROW, JJ., concurring.