VACUUM OIL COMPANY, Appellant, v. JOHN G. CARSTENS et al., Appellees.

FIRESTONE TIRE & RUBBER COMPANY, Appellant, v. JOHN G. CARSTENS et al., Appellees.

No. 39942.

JUNE 23, 1930.

REHEARING DENIED FEBRUARY 17, 1931.

*Chester J. Eller* and *Gray & Gray,* for plaintiffs-appellants.

*V. P. McManus* and *Maurice J. Breen,* for defendants-appellees.

STEVENS, J.—I. The plaintiffs will be referred to in this opinion as appellants, and the defendant as appellee. The cross-appeal of the plaintiff Firestone Tire & Rubber Company will be considered separately.

All of the merchandise involved in both actions was sold at an earlier date, and delivered to the purchaser in 1928. The invoices of the Vacuum Oil Company bore date February 1st, 24th, and 27th, and March 3d and 24th. In addition to certain documentary evidence, to be considered later, the appellant Vacuum Oil Company introduced in evidence the deposition of G. A. Blilely, salesman during 1927 and 1928, and Harper Gordon, its credit manager at Des Moines during that period. The fraud charged in the petition consists of certain oral and written statements and representations by Carstens as to the condition of his business and his financial worth. Blilely, the salesman, testified that he became acquainted with John G. Carstens, owner and proprietor of the Carstens Auto Company, when he called at his place of business at Manson, Iowa, in March, 1927; that, on the occasion of such visit, he made inquiry as to the condition of his business and the extent of his property; that, in reply, Carstens stated that he was making money; that he was receiving a profit on the sale of old and new cars; that he was financially sound; that the business was good; and that he believed he would be able to discount and pay his bills promptly. The witness further testified that he was shown a property statement, which included an item of $2,293.85, designated as office equipment. The witness further testified that he had subsequent monthly conversations with Carstens, in which the condition of his business, the extent of his property, and his ability to pay current bills were discussed. Gordon testified that he also had a conversation with Carstens in 1926 and 1927, and at least one subsequent conversation, in which Carstens said that he was making good progress; that the sale of cars had been large, and better than the year before; and that he had prospects to make a large bunch of money. No property statement was, however, then exhibited to the witness. The witness further testified that

Carstens did say that he owned stock equipment of the value of $2,293.85.

The documentary evidence above referred to consisted of alleged property or financial statements, and certified copies of certain papers filed in involuntary bankruptcy proceedings which were instituted against the Auto Company a few days after these actions were commenced. The trustee appointed in the bankruptcy proceedings was made a party to this action, and filed many pleadings, but no appearance was entered for John G. Carstens or the Carstens Auto Company. None of the alleged financial or property statements are incorporated in the abstract. We have, however, gone outside of the record and examined certain of the original exhibits certified to this court for our inspection. The last written statement made to the Vacuum Oil Company, so far as we are advised, bears date February 1, 1928. It shows current assets, including secured and unsecured accounts aggregating $1,692.57, of $8,009.08. The statement also shows fixed assets, including an item of $2,293.85 shop equipment, of $4,543.66. The statement further shows that business for the year ending February 1, 1928, yielded a profit of $1,825.80. The aggregate amount of liabilities shown on the statement is $7,193.97.

It is the claim of the appellant Vacuum Oil Company that it believed and relied upon the oral statements and representations of Carstens, and also upon the document referred to, and other similar documents of earlier date. It appears without dispute that John G. Carstens abandoned his business on May 5th, and temporarily left the community.

The only item contained in the statement of February 1st showing assets that are in any way disputed by testimony is the one designated as shop equipment. For the purpose, as declared by its counsel, of showing the falsity of Carstens's statement of liabilities, a certified copy of the petition in involuntary bankruptcy was introduced in evidence. That it was inadmissible for the purpose stated will be conceded without argument; but, this fact being waived, an examination of the document shows that the total amount owed the creditors named in the petition was but slightly in excess of $3,900. Included in this aggregate is a note of $2,087.78, dated March 1, 1928, and made payable to Harry Carstens. The statement referred to shows miscella-

neous notes not identified, of $900. The allegations of the petition include two notes, one of $800 and one of $650, which were executed prior to February 1, 1928. The correctness of the statement is not otherwise questioned by the evidence. Upon his return home, John G. Carstens appeared in the bankruptcy proceedings and admitted insolvency. Later, he filed a schedule of assets and liabilities. The date of this schedule is not shown; but, if the order of the court was complied with, it was filed prior to June 16th.

The schedule thus filed showed assets of $8,075 and liabilities of $15,678. None of the items of liabilities are dated. The trustee in bankruptcy testified that he sold the shop equipment for $1,267.72. Included in this sum was a cash register costing $895, appraised at $300, and a bookkeeping machine costing $300, appraised at $100. The only direct testimony introduced by appellant to prove that Carstens was not the owner of the item of shop equipment previously referred to was the alleged statement of Henry Carstens to Gordon that it was a part of the building in which the business was carried on, and that it belonged to him. That this testimony was mere hearsay, and wholly insufficient to prove the falsity of this item, is too apparent for discussion. A claim is made in argument that Carstens stated orally to one of the witnesses for appellant that he possessed a net wealth of $8,000. The record fails to show that any such statement was made. The witness Gordon testified that he made inquiry of a bank at Manson, and was informed thereby that Carstens had shop equipment and property of a net worth in the amount stated.

Before proceeding further with the discussion, we desire to refer to the evidence relied upon by the appellant Firestone Tire & Rubber Company. The evidence in behalf of this appellant, as in the case of the Vacuum Oil Company, consists principally of the testimony of one Popejoy, salesman and collector therefor, F. M. Stone, its credit manager at Des Moines, and certain property or financial statements received from the Carstens Auto Company. Popejoy testified that he first called on Carstens in July, 1927, in his capacity as a collector for the company; that, on the occasion in question, Carstens stated that he would be in a good position to discount his bills; that his business was good, and that he expected a much better business during the coming

year; that he thought he would be able to discount the spring dating bills; that he would make up a financial report after February 1st, when his invoice was taken. The witness at the time took an inventory of the stock, which was not "heavy." No oral representations are claimed to have been made by Carstens to the witness Stone. In addition to the statements and representations above referred to, Carstens forwarded some three or four property statements to this appellant. None of these statements are incorporated in the abstract, but we assume that the substance thereof is indicated by the witnesses. Stone testified that one of the property statements sent him showed a claimed net worth of $7,650, and another of $9,128.09; that the statement for 1927, dated February 1st, showed a claimed net worth of $7,790.33, and the one for 1928, of $6,766.41, and that a profit for the preceding year of $825.80 was realized. The order for the goods covered by the invoices involved in this case was entered November 30, 1927. Delivery was to be, and was, made in the spring. If any of the items shown on the several property or financial statements furnished by Carstens to either appellant were false, the evidence fails to show it.

In addition to the foregoing testimony, purported copies of two letters claimed to have been written by Carstens to his wife after he abandoned the business were offered in evidence on behalf of this appellant. These letters represented confidential communications between the husband and wife, and, for this reason, even the originals were inadmissible. The purported copies were offered without any foundation showing the inability of appellants to produce the originals, and were, for this reason, clearly inadmissible.

It is contended by appellants that they relied upon the statements and representations of Carstens in selling and delivering merchandise to him; that they did not know of his in-solvency, or that the oral or written statements were inaccurate or incorrect, until after Carstens abandoned the business, on May 5, 1928. The conclusions expressed by the witnesses that the statements by Carstens of his net wealth were untrue, that he had many outstanding obligations unknown to them, and that he had an overdraft of $1,000 at a bank, were all hearsay and incompetent. Practically all of the

1134

alleged oral false and fraudulent representations were mere conclusions, and related to matters in the future, or were mere optimistic expressions by Carstens. He may have believed that he could discount his bills, that business was good, and that he was making money. So far as the evidence shows, his business did yield a profit at the close of two or more fiscal years. If it be conceded that the evidence established Carstens's insolvency at the time of the adjudication, the conclusion that he was insolvent on some prior date, months or years before, is by no means a necessary inference therefrom. The burden was on appellants to prove something more than mere insolvency. *Smith Lbr. Co. v. Scott County Garbage R. & F. Co.*, 149 Iowa 272. They were bound to prove an intent on the part of the purchaser at the time the goods were sold, not to pay therefor. *Smith Lbr. Co. v. Scott County Garbage R. & F. Co.*, supra; *Seeley v. Seeley-Howe Le Van Co.*, 130 Iowa 626; *Cox Shoe Co. v. Adams*, 105 Iowa 402; *Oswego Starch Factory v. Lendrum*, 57 Iowa 573; *Reid, Murdock & Fisher v. Cowduroy*, 79 Iowa 169; *Kearney Mill & Elev. Co. v. Union Pac. R. Co.*, 97 Iowa 719.

The evidence is wholly insufficient to establish such intent, even by inference, on the part of the debtor. On the contrary, both appellants admit that they had been selling merchandise to the Carstens Auto Company for more than a year, at least; that they had received payments on account; that monthly inquiries and investigation were made by their salesman, and reports of the information thus obtained were sent to their respective employers.

We have not referred in detail to every item of evidence contained in the abstract. We have, however, stated the substance of it. It will not do to assume from the condition of the debtor at the time bankruptcy proceedings were instituted that all of the statements and representations previously made by him to appellants were false and untrue. It was incumbent upon them to prove the falsity of these statements by competent evidence. The record contains no such evidence. We conclude that the judgment of the court dismissing both petitions was right.

II. The defendant trustee in bankruptcy appealed from the judgment of the court refusing to tax witness fees in favor of John G. Carstens, who was subpoenaed, but not called as a wit-

 ness in the case. Carstens was a party to the action, and, while no appearance was made for him, the cross-examination of the witnesses and the evidence introduced in behalf of the trustee prevented a judgment from being entered against him on default. We think he was not entitled to fees as a witness.—*Affirmed on all appeals.*

MORLING, C. J., and EVANS, ALBERT, KINDIG, WAGNER, and GRIMM, JJ., concur.