HOME OWNERS LOAN CORPORATION, Appellee, v. FAY RUPE et al., Defendants, VERNON S. MAXWELL, by EDWARD F. O'BRIEN, Guardian, Intervenor, Appellant.

No. 44532.

DECEMBER 30, 1938.

Edward F. O'Brien, for appellant.

Berry & Berry, for appellee.

HAMILTON, J.—The real estate involved in this litigation was conveyed in October 1924 to Vernon Maxwell and Bertha Maxwell. On July 12, 1928, Vernon Maxwell and Bertha Maxwell, husband and wife, executed a note in the sum of $1500 secured by mortgage on lots 5 and 6, block 15, Highland Plat No. 3, situated in Sioux City, Woodbury county, Iowa. This note and mortgage were duly assigned, on October 12, 1928, to Mabel Larson Griepenburg. On September 23, 1928, Bertha Maxwell died intestate in Sioux City, Iowa. No administration was ever had of her estate. It will thus be noticed that she died seized of one-half interest in said real estate. The mortgagors had no children except Vernon S. Maxwell, an adopted child, who at the time of this litigation was sixteen years of age. Edward F. O'Brien was the duly appointed, qualified and acting guardian of the property of said minor. On February 16, 1929, the husband, Vernon Maxwell, conveyed said property to Vincent F. Harrington in which deed the grantor is described as "a widower". Harrington thereafter sold and conveyed said property to Fay Rupe. Under date of September 6, 1933, Rupe made application to the Sioux City, Iowa, office of the Home Owners Loan Corporation for a home loan to take up said mortgage and pay certain delinquent taxes and special assessments, all in accordance with the provision of the Home Owners Loan Act of 1933 as contained in Chapter 12, section 1461 et seq., Title 12, U. S. C. A. The usual procedure was fol-

lowed. Abstract of title showing the above mentioned deeds and mortgage was brought down to date and furnished by applicant and was turned over to one C. C. Yeaman for examination. This attorney duly certified that the applicant had title and that the Home Owners Loan Corporation would have a first lien on the premises. Accordingly the loan was made; bonds of appellee in the amount of $1600, par value, with accrued interest amounting to $12.91 together with cash in the amount of $14.79 were duly turned over to Mabel Larson Griepenburg, assignee of the Maxwell mortgage, in full payment and satisfaction of the same and the mortgage was duly released June 13, 1934. Appellee also paid delinquent taxes amounting to $56.51 and special assessments totaling $38.85. The new mortgage bears date of March 15, 1934 and was recorded June 11, 1934 and purported to be a first lien upon the premises. Failing to keep up the amortization payments of principal and interest and taxes assessed against the property, appellee, on March 25, 1937, brought an action to foreclose its mortgage. The minor, Vernon S. Maxwell, by his guardian, Edward F. O'Brien, intervened setting up the fact that his mother died seized of an undivided one-half interest in said real estate and by right of succession he was the owner of an undivided one-third of said real estate; that the father, Vernon Maxwell, at the time he conveyed said real estate to Harrington was the owner of an undivided two-thirds only and had no authority to convey the interest of said minor-intervenor and asked that the new mortgage be declared of no force and effect as to the interest of said minor. To this petition of intervention, appellee filed answer setting up the facts and circumstances leading up to and including the execution of the new mortgage—the payment and satisfaction of the old mortgage, interest and taxes; that the same was paid at the special instance and request of Fay Rupe and wife with the express understanding that its mortgage would be a first lien on the real estate involved; that the interest of said minor, if any, was acquired subsequent to the making and filing for record of the original mortgage and was subject thereto and also to the taxes and special assessments above referred to; and, that plaintiff, under the facts pleaded, was entitled, under the equitable doctrine of subrogation, to have its security under its mortgage of record substituted in fact in place of that which plaintiff took up and discharged. To this answer, intervenor filed

a reply disclaiming knowledge or information with reference to numerous matters and therefore denying the same; denying that said minor was bound by any agreement or understanding between appellee and the new mortgagors; alleging that any payments made by appellee were voluntary payments without the knowledge or consent of intervenor; that in failing to ascertain the condition of the title, from an examination of the abstract of title, appellee was guilty of gross negligence and not entitled to the benefits of the equitable doctrine of subrogation. There was a decree for plaintiff and intervenor has appealed.

The doctrine of subrogation is purely of equitable origin and grew out of the need, in aid of natural justice, in placing a burden where it of right ought to rest. Neither the courts nor textbook writers have attempted to place limitations upon its application.

The Chancery Court of New Jersey, in the case of Home Owners Loan Corporation v. Collins et al, 120 N. J. Eq. 266, 184 A. 621, in expounding this doctrine made use of the following language [page 622]:

"It is commonly said that subrogation is either legal or conventional; that legal subrogation exists only in favor of one who, to protect his own rights, pays the debt of another; that conventional subrogation arises only upon agreement, between the lender and the debtor or old creditor, that the lender shall be subrogated to the old lien; that otherwise, the one who advances money to pay a debt cannot be subrogated to the rights of the old creditor. Seeley v. Bacon (N. J. Ch.) 34 A. 139; Gore v. Brian (N. J. Ch.) 35 A. 897. Generally, when the person advancing the money to pay the old debt takes a new mortgage and the old lien is cancelled, there is no subrogation, because the acceptance of the new security evidences an agreement and intention by the new creditor to rely thereon rather than on the old, and because, upon the cancellation of the old lien, nothing remains to be the object of subrogation. Vaux v. Vaux, 115 N. J. Eq. 586, 172 A. 68.

"But where, through fraud or mistake, the new security turns out to be defective, there frequently arises a third kind of subrogation. It does not depend upon the subrogee having been a surety or having had an interest in the property to protect, and it does not depend upon an agreement that he would be subro-

gated to the rights of the old creditor. It grows rather from an agreement or understanding that he would obtain a security of a particular kind and from his failure, through fraud or mistake, to obtain such security. Our reports furnish several examples of this sort of subrogation: Barnett v. Griffith, 27 N. J. Eq. 201, where one of the mortgagors was an infant. Tradesmen's Bldg., etc., Ass'n. v. Thompson, 32 N. J. Eq. 133, where the person who cancelled the second mortgage was not authorized to do so. Seeley v. Bacon, supra, money advanced in ignorance of mortgage lien, although a proper search would have disclosed it. Gore v. Brian, supra, lender relied on debtor's assurance that a second mortgage, open of record, had been paid. Serial B. L. & Sav. Inst. v. Ehrhardt, 95 N. J. Eq. 607, 124 A. 56, the woman who executed the new mortgage to bar dower was not actually the wife of the mortgagor. In Jackson Trust Co. v. Gilkinson, 105 N. J. Eq. 116, 147 A. 113, mechanics' liens intervened; inspection of the premises at the time of the execution of the new mortgage would have shown a building in course of erection. In all these cases, subrogation was granted on the ground that a state of facts fraudulently concealed from the lender, or of which he was ignorant, impaired the lien of the new mortgage. Cases of this kind in other jurisdictions are analyzed in Capen v. Garrison, 193 Mo. 335, 92 S. W. 368, 5 L. R. A. (N. S.) 838; Southern Cotton Oil Co. v. Napoleon Hill Cotton Co., 108 Ark. 555, 158 S. W. 1082, 46 L. R. A. (N. S.) 1049; Berry v. Stigall, 253 Mo. 690, 162 S. W. 126, 50 L. R. A. (N. S.) 489, Ann. Cas. 1915C, 118; Newcomer v. Sibon, 119 Kan. 358, 239 P. 1110, 43 A. L. R. 1393, and Federal Land Bank v. Marvin, 228 Ky. 242, 14 S. W. (2d) 762, 70 A. L. R. 1396.''

See, also, 25 R. C. L. 1343, par. 26; Thomas v. Lester, 166 Ga. 274, 277, 142 S. E. 870; Johnson v. Barrett, 117 Ind. 551, 19 N. E. 199, 10 Am. St. Rep. 83; London & N. W. American Mortgage Co. v. Tracy, 58 Minn. 201, 59 N. W. 1001, 70 A. L. R. 1414.

There is likewise a very thorough and able discussion of the subject in an opinion by Ladd, J., in Kent v. Bailey, 181 Iowa 489, 164 N. W. 852, in which discussion we find the following statement [page 495 of 181 Iowa, page 854 of 164 N. W.] :

''And we are of opinion that the agreement that the mortgage to plaintiff should be a first lien was tantamount to an

undertaking that whatever necessary to accomplish this would be done, even though this might require the taking of an assignment of the existing mortgage.''

We are of the opinion that the facts in the instant case are such as to call for the application of the principles announced in the foregoing cases. Under the act of congress, the mortgage was required to be a first lien. Both the application and mortgage expressly stated it was to be a first lien. The money was paid by appellee under the mistaken belief that mortgagors had good title. This was based upon the opinion of the examining attorney who failed to notice that the deed to the Maxwells was a deed to both husband and wife. True, there was no probate proceedings. No estate was opened up and the husband proceeded to sell the property as if he were the absolute owner. This minor resided at home and, so far as this record shows, none of the parties connected with the conveyances had observed the fact that the wife's name was in the deed as one of the grantees. The Home Owners Loan Corporation was organized to meet an emergency and so great was the emergency that in cities, such as Sioux City, the home office was flooded with applications. The evidence shows that more than 4000 were pending in the Sioux City office at the time this loan was made. This necessitated the selection of about a dozen different lawyers who examined abstracts and were paid a fixed fee and who had no other connection with the corporation and were not, except in a very limited sense, employees of the corporation. In the application for the loan, the applicant agreed ''to pay any cost actually incurred for reasonable appraisal, examination and perfecting of title, survey, recording, or other necessary expenses, such work to be done by my agents, selected by the corporation. * * *''

Manifestly, the district attorney for the Home Owners Loan Corporation could not recheck all these examinations with the abstracts or the records, and the evidence shows that the certificate of the examiner was accepted as correct and true unless some question arose in which event the matter was taken up with the district office. As bearing on the question of negligence, we again quote from the New Jersey Court of Chancery from the opinion in the Collins case, supra:

''In considering what effect should be given to the negli-

gence of complainant, the surrounding circumstances should be considered. Complainant corporation was created by act of Congress to meet a national emergency; its operations were on a gigantic scale; its agencies numerous and scattered; its attention centered on granting to home owners the maximum of relief in the minimum of time. Necessarily, its personnel was hurriedly gathered. The man who must act quickly in an emergency is not required or expected to proceed with the same care as if the situation were quiet and unhurried. So with complainant. The failure of complainant to notify the settlement attorney of the existence of Newman's mortgage is not surprising, but is a normal result of the tremendous volume of business which complainant was transacting through its hastily formed organization.

"In both Seeley v. Bacon, supra, and Jackson Trust Co. v. Gilkinson, supra, the lender's predicament was due to the carelessness of himself or his agent, yet he was not denied relief. Vice Chancellor Leaming in Institute B. & L. Ass'n. v. Edwards, 81 N. J. Eq. 359, 365, 86 A. 962, 964, said: 'That even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby. * * * Where the act done by mistake is one calculated to induce others to take a line of conduct which will put them to loss if the mistake is corrected, it ought to be clear that the party asking for relief has been led into the mistake in spite of the employment of the highest degree of vigilance. Where, however, no one is injured by the mistake but the party himself, and no one has changed his position by reason of the act executed through the influence of the alleged mistake, I see no reason why the mistake should not be corrected although the highest degree of vigilance has not been exercised.' "

See, also, Worchester North Savings Institution v. Farwell, 292 Mass. 568, 198 N. E. 897; Mitchell v. Jackson, 177 Okla. 441, 60 P. 2d. 390; Note, 70 A. L. R. 1410; Home Owners Loan Corporation v. Parker, 181 Okla. 234, 73 P. 2d 170.

Intervenor was in no way misled or injured. He was not induced to change and did not change his position. The original mortgage was a lien as against this minor and this loan was in distress and, no doubt, had there not been an effort to refinance

the same, the original mortgage would have taken the real estate. Under the court's decree, intervenor was given the right to redeem in the event of a decree of foreclosure. Whether he has lost this right to redeem by reason of this appeal does not call for comment on our part and is not pertinent to any issue before us. We have carefully examined the cases cited by appellant but they are all distinguishable in their facts from the facts in the case at bar. There are some other minor points raised by appellant to which we have given our consideration and find they are without substantial merit.

The case is accordingly affirmed.—Affirmed.

SAGER, C. J., and ANDERSON, RICHARDS, MITCHELL, and DONEGAN, JJ., concur.