**Gerald A. LoRANG, Appellant,**

v.

**RASMUSSON CONSTRUCTION COMPANY and Harold Rasmusson, Appellees,**

**State Bank and Trust Company, Appellee.**

**No. 89–364.**

Court of Appeals of Iowa.

Oct. 23, 1990.

future personal property in the bank's possession. Three of the notes, for $25,000 due September 1987, $30,000 due September 1988, and $35,000 due September 1989, were secured by certain machinery and equipment. These same three notes were subscribed by Harold E. Rasmusson, Regina C. Rasmusson, and "Rasmusson Construction Co. by Harold E. Rasmusson." The fourth note for $10,000 due September 1986 contained no notation of security agreements and was subscribed only by Harold E. Rasmusson and Regina C. Rasmusson.

Plaintiff-appellant Gerald A. LoRang filed suit in November 1987 seeking over $9000 for legal services rendered in September 1980 on behalf of defendants Harold Rasmusson and Rasmusson Construction Company, of which Harold Rasmusson is president. On December 8, 1987, the district court entered a default judgment in plaintiff's favor for $11,000 and interest. That same day plaintiff caused a general execution to issue. *See* Iowa Code § 626.7 (1989).

Mark J. Olberding of Miller, LoRang & Olberding, Nevada, for appellant.

John L. McKinney, Ames, for appellees.

Jerrold L. Handsaker of Parker & Handsaker, Nevada, for appellee State Bank and Trust Co.

Considered by SCHLEGEL, P.J., and SACKETT and HABHAB, JJ.

SCHLEGEL, Presiding Judge.

Plaintiff Gerald A. LoRang (garnishor) appeals a district court determination that garnishee State Bank & Trust of Nevada is entitled to retain funds applied by defendant Rasmusson Construction Co. to satisfy the personal debt of defendant Harold E. Rasmusson, president of Rasmusson Construction. We affirm.

On August 11, 1986, Harold and his wife, Regina Rasmusson, signed a series of four notes to State Bank and Trust. All four of the notes indicated the borrowers were Harold E. Rasmusson and Regina C. Rasmusson. Each note contained set-off provisions and granted to the bank an all-encompassing security interest in present and

On December 10, 1986, with the $10,000 note being three months and ten days overdue, State Bank debited Rasmusson Construction's corporate account for $7330. Allegedly with the permission or acquiescence of Harold Rasmusson, the bank applied those corporate funds in partial satisfaction of the $10,000 note signed only by Harold and Regina Rasmusson personally. The note was marked "*Paid* 12–10–86." On December 11 a Story County deputy sheriff served notice of garnishment and interrogatories on State Bank. The garnishee bank's answers to interrogatories stated that it held $3.35 in checking and savings accounts owned by defendants and $8052 "certificates held as security for loans." On December 31 defendants executed a document on State Bank stationery which stated: "I hereby assign and transfer to State Bank & Trust Co. of Nevada, Iowa, all money due me on accounts receivable for work that I have done to secure my notes." The assignment was signed "Rasmusson Const. Co." by Harold E. Ras-

musson and by Harold E. Rasmusson personally.

On January 5, 1987, plaintiff interrogated defendants. *See id.* §§ 630.1, 630.4 (examination of debtor). On January 11 plaintiff caused a deputy sheriff to serve Hertz Farm Management, Inc., with notice of garnishment and interrogatories. Hertz answered that it owed Rasmusson Construction $4762. Hertz turned over a check for the amount due to the sheriff. The bank intervened and claimed the funds due from Hertz by virtue of the December 31 assignment of accounts receivable.

On May 4, 1987, plaintiff filed a petition for a declaratory judgment that the funds held by the sheriff should be applied to the plaintiff's judgment free of any claim by the bank and a motion to condemn the Hertz funds. This document was combined with a pleading controverting State Bank's answers to interrogatories. After a hearing on the bank's motion to quash the garnishment of the Hertz funds and plaintiff's motion to condemn the funds, on July 13, 1987, Judge Carl E. Peterson filed an order denying the bank's motion and granting plaintiff's. Specifically, Judge Peterson found that no security interest had arisen because the check had not come into the bank's possession pursuant to the terms of the security agreements. Judge Peterson also found that no evidence of an assignment had been presented. In an order filed November 11, Judge Peterson rejected the bank's motions for reconsideration and for enlarging or amending findings. The motions offered affidavits and exhibits to prove the existence of an assignment. Judge Peterson held that rule 179(b) motions could not be used by counsel to supply critical missing evidence.

On October 13, 1988, the parties, including the garnishee bank, held a trial on the controverted answers given by the bank to the garnishment interrogatories. In a judgment filed December 19, Judge Louie F. Beisser determined that the court was not precluded from reconsidering the disposition of the Hertz funds and determined that the bank had a superior interest in those funds. Judge Beisser also rejected plaintiff's numerous theories for recovery of the funds taken from the Rasmusson Construction corporate account to cover the personal loan. Plaintiff was awarded $300 reasonable expenses for the bank's refusal to admit the truth and accuracy of the $10,000 note and the $7330 corporate withdrawal slip.

In an order filed February 9, 1989, Judge Beisser reversed himself and awarded the Hertz funds to plaintiff. Citing *Jordan Co. v. Sperry Bros.*, 141 Iowa 225, 229, 119 N.W. 692, 694 (1909) and principles contained in 38 C.J.S. *Garnishment* § 293(d) (1943), Judge Beisser held: "Since the bank could have appealed the court's ruling on the garnishment motion, but failed to do so; it should have been barred from relitigating the garnishment issue at the time of trial." Judge Beisser, however, again rejected plaintiff's argument that he was entitled to challenge the transfer of corporate funds to cover Harold's personal debt as ultra vires, holding plaintiff was precluded from asserting the doctrine. The bases of plaintiff's argument, which is the subject of this appeal, will be discussed in greater detail below.

We review for correction of errors at law; findings of fact by the trial court have the effect of a special verdict. Iowa R.App.P. 4. In other words, we are bound by the trial court's findings of fact if they are supported by substantial evidence, Iowa R.App.P. 14(f)(1), but we are not bound by the trial court's conclusions of law.

Plaintiff's argument on appeal is as deceptively simple as it is inventive: As garnishor of Rasmusson construction company, plaintiff stands in the debtor corporation's place and may assert an ultra vires claim on behalf of the debtor corporation even though the allegedly ultra vires action took place before garnishment. We are left, however, with a couple of important questions. First, did this garnishor truly stand in the place of the corporation in such a way as to be subrogated fully to the corporation's causes of action as opposed to having a right equivalent to the corporation's right to recover debts? Second, if

we assume a garnishor stands in the place of a debtor corporation to assert the corporation's cause of action and if we assume the act using corporate assets to satisfy personal debts is ultra vires rather than a breach of fiduciary duty, against whom may the corporation assert an ultra vires claim?

■ Citing *J.J. Smith Lumber Co. v. Scott County Garbage Reducing & Fuel Co.*, 149 Iowa 272, 276–77, 128 N.W. 389, 391 (1910), plaintiff argues, "It is well settled law that a garnishor stands in the shoes of the judgement debtor is entitled to receive and is entitled to pursue the same remedies the judgement debtor would have if the judgement debtor were to assert a claim on its own behalf." The supreme court in *J.J. Smith Lumber* states:

> The general rule as to garnishment is that the plaintiff in garnishment stands in the shoes of the original defendant, and that he can have no greater rights than the judgment defendant, and the garnishee is not to be placed in any worse condition than if the defendant himself were enforcing his claim.

*Id.* (citations omitted). We thus are called to decide what nature of claims the judgment debtor may pursue, or, in this case, was entitled to pursue. The supreme court, quoting a Massachusetts case, further states:

> The great question then, the only question, is whether [the garnishee] owes the principal debtor anything; and, if it appears that he does, he is held liable to pay it to his creditor's creditor, instead of paying it to the creditor himself. It is unnecessary here to consider the various questions which may arise, as to the nature of such debts, whether absolute or contingent, and the nature of such contingency; whether, if uncertain at the time, it can be made certain at a future time, by sales, collections of money or other proceedings, showing that in point of fact the trustee was a debtor to the principal at the time of the attachment. In such cases, although the facts are subsequently disclosed, and the accounts subsequently adjusted, in order to charge

the trustee, the result must show that the trustee was a debtor to the principal at the time of the attachment.

*Id.* at 278, 128 N.W. at 391 (quoting *Allen v. Hall*, 46 Mass. (5 Met.) 263, 265 (1842)).

Although from the foregoing quotations and the cases relied upon one could argue that a judgment creditor is entitled to collect unliquidated debts, we are not prepared to take this to the extreme of allowing, as plaintiff here suggests, the judgment creditor complete subrogation to any rights of action the judgment debtor might have. Neither this proposition nor this policy is supported by our cases or our statutes. Although subrogation is an equitable doctrine, *Home Owners Loan Corp. v. Rupe*, 225 Iowa 1044, 1047, 283 N.W. 108, 109 (1938), that should be "applied to subserve the ends of justice and do equity in the case under consideration dependent on the facts of that particular case," *Klotz v. Klotz*, 440 N.W.2d 406, 409 (Iowa App. 1989) (citation omitted), we think its application here would be inappropriate. We find no grounds for legal subrogation, which "exists only in favor of one who, to protect his own rights, pays the debt of another," or conventional subrogation, "which arises only upon agreement ... that the lender shall be subrogated to the old lien." *Rupe*, 225 Iowa at 1047, 283 N.W. at 109. With respect to any obligation the bank might owe the corporation, the plaintiff garnishor is at most a volunteer or a stranger. *See* 73 Am.Jur. *Subrogation* § 23 (1974); *see also Fenly v. Revell*, 170 Kan. 705, 711–12, 228 P.2d 905, 910 (1951). In either case plaintiff would not be entitled to recover. *See Miller & Chaney Bank of Newell v. Collis*, 211 Iowa 859, 863–64, 234 N.W. 550, 552 (1931) (requiring action "in performance of a legal duty or for the protection of a legal right or at the request of the party ultimately bound, and even in certain other cases, favored by public policy" (quoting 5 Pomeroy's Equity Jurisprudence § 2343 (4th ed. 1918))).

This is not to say, however, that the plaintiff could not recover in a situation such as the one before us. Had plaintiff

gained an interest in the corporation through levy he might have obtained the necessary rights he seeks to enforce his judgment. Plaintiff then might have maintained an action against the bank and Rasmusson for conversion or even fraud. Under the circumstances before us, however, at the time the notice of garnishment was served on the bank, the bank owed nothing to the judgment debtor; therefore, the garnishee bank owed nothing to the garnishor.

Even if plaintiff could maintain an action in place of or on behalf of the corporation, we are not convinced that he may succeed against State Bank in this instance. The former Iowa Business Corporation Act, under which plaintiff seeks relief, stated that no acts or conveyances were invalid for lack of power except that "such lack of capacity or power may be asserted ... [i]n a proceeding *by the corporation*, whether acting directly or through a ... legal representative, ... *against the incumbent or former officers or directors of the corporation.*" Iowa Code § 496A.6(2) (1987) (emphasis added). The new Iowa Business Corporation Act is substantially similar. Iowa Code § 490.304(2) (Supp.1989) ("corporation's power to act may be challenged ... [b]y the corporation, directly, derivatively, or through a ... legal representative, against an incumbent or former director, officer, employee, or agent of the corporation"). This statutory formulation seems unambiguous, and the purpose of protecting shareholders and the corporation from ultra vires acts of corporate officers and directors by creating statutory indemnity for the corporation seems clear.

The fatal flaw in plaintiff's argument is that he can show no authority supporting recovery of the corporation's assets from an officer's creditor. Minnesota's statute, like the former Iowa act, was derived from the Model Business Corporation Act, section 7, and authorizes "a proceeding by or in the name of the corporation ... against a person having actual knowledge of the lack of power." 6 Minn.Stat. § 302A.165(b) (1988). Our statute, however, provides that plaintiff's only recourse was "against the incumbent or former officers or directors of the corporation." Iowa Code § 496A.6(2) (1987). Although the trial court's grounds for finding a garnishor may not sue on behalf of the corporation under section 496A.6(2) may have been inaccurate, it does not appear that the statute provides plaintiff a remedy against the bank in this instance. We must, therefore, affirm the trial court's finding that the garnishee bank was entitled to retain the funds paid to it before it was served with a notice of garnishment.

The garnishee bank cross-appealed the trial court's finding that the bank was barred from relitigating the Hertz garnishment issue at the trial on the bank's controverted answers. The supreme court dismissed the cross-appeal for lack of timeliness.

For the foregoing reasons, we affirm the appeal. The parties shall bear their own costs relating to the appeal and the cross-appeal; other costs shall be taxed equally between the parties.

AFFIRMED.