## STATE OF IOWA;

### DES MOINES, JUNE TERM, A. D. 1871.

IN THE TWENTY-SIXTH YEAR OF THE STATE.

PRESENT:

HON. JAMES G. DAY, CHIEF JUSTICE.
"    CHESTER C. COLE,
"    JOSEPH M. BECK,    } JUDGES.
"    WILLIAM E. MILLER,

---

WHITNEY v. ARMSTRONG *et al.*

1. **Judicial sale; ACTION: PARTIES.** A person who has transferred, by indorsement, promissory notes secured by mortgage on real estate, has, by virtue of his collateral liability as indorser thereon, such an interest in having the mortgaged premises sell for their fair value at foreclosure sale thereof, as will entitle him to maintain an action in equity to set aside such sale on the ground of irregularity

or fraud when it appears that the premises were sold for less than their value.

2.—— SALE IN BULK: IRREGULAR APPRAISEMENT. Where land was sold in bulk no attempt having been made to sell in parcel, for an inadequate price, and where it appeared through mistake that the liens deducted from the appraisement were for too large an amount, the sale was set aside.

*il from Fayette District Court.*

TUESDAY, JUNE 20.

ACTION in equity for the setting aside of a sheriff's sale. Petition dismissed. Plaintiff appeals. The facts are stated in the opinion.

*Shiras, Van Duzee & Henderson*, and *Jos. Hobson* for the appellant.

*Ainsworth & Miller, Noble, Hatch & Freese*, and *Mc-Clintock & Rickel* for the appellees.

DAY, Ch. J.— About the 20th day of July, 1868, the plaintiff sold and conveyed to George N. Armstrong the N. E. ¼ of S. 28, and the N. W. ¼ of the N. E. ¼ of S. 23, in T. 94, R. 8, for the sum of $8,000, and for the unpaid purchase-money received from said Armstrong four promissory notes, secured by mortgage on the premises above described; one of said notes being for the sum of $400, payable on or before November 1, 1868; one for $800, payable on or before January 1, 1870; one for $932.46, payable on or before January 1, 1872; and one for $800, payable on or before Jan. 1, 1871. About the 31st day of May, 1869, the plaintiff agreed with the defendant, H. Rush, to sell to him the mortgage and the last three of the above-described notes; and, at his request, transferred the same to one C. Knight.

At the December term, 1869, of the district court of Fayette county, a judgment was obtained by C. Knight, against George N. Armstrong, for the sum of $259.02, being the amount of interest at the time due, and the mortgaged premises were, by decree of said court, ordered to be sold for the satisfaction of said judgment. Execution being issued for the sale of said premises, the same were appraised as follows :

The N. E. ¼ of N. E. ¼ of S. 28, at $17 per acre; the S. E. ¼ of N. E. ¼ of S. 28, at $12 per acre; the N. W. ¼ of N. E. ¼ of S. 28, at $17 per acre; the S. W. ¼ of N. E. ¼ of S. 28, at $12 per acre; and the N. W. ¼ of N. E. ¼ of S. 23, at $18 per acre; making in all the sum of $3,049.

In the advertisement the sheriff misdescribed the N. W. ¼ of N. E. ¼ of S. 23, T. 94; and on the 27th day of Jan., 1870, George N. Armstrong delivered to him a paper as follows: I hereby request Jacob Swank, sheriff of Fayette county, Iowa, to sell the N. W. ¼ of N. E.¼ of S. 23, T. 94, R. 8, west, notwithstanding the same has been wrongly advertised. And I hereby waive all claims for any damages which I might claim by reason thereof. In obedience to a subpœna, issued at the suggestion of the attorneys of H. Rush, the plaintiff, upon the day of sale, was at Independence, the fees to secure his attendance having been advanced by Rush; but he was not sworn as a witness. The sheriff's original return shows that he deducted from two-thirds the appraised value of the lands the following prior liens, to wit: $6.74 from two-thirds appraised value of the N. W. ¼ of the N. E. ¼ of S. 23, and $1,052.26 from the appraised value of said land; in all $1,059; and that, on the 27th day of Jan., 1870, he sold the same to H. Rush for $800, to-wit: the N. E. ¼ of the N. E. ¼ S. 28, for $174.11; the N. W. ¼ of the N. E. ¼ for $174.10; and the S. E. ¼ of the N. E. ¼ of S. 28, for $122.52; and the S. W. ¼ of the N. E. ¼ of S. 28 ; and the N. W. ¼ of the N. E. ¼ of S. 23, for $206.75.

On the 10th day of December, 1870, the sheriff amended his return, stating that at the time of the sale of the property there was $1,267.65 prior liens of record against the property, and that said sum was the true and actual amount deducted, and that the figures $1,059, set forth in the return, occurred through mistake.

The mortgage constituting the incumbrance is upon the N. E. ¼ of S. 28, and upon lot 1, and 16½ feet off of the north side of block 1, in Hoyt's addition to West Union; creating no lien upon the N. W. ¼ of the N. E. ¼ of S. 23, which is heavily timbered, and of the value of $30 per acre.

Before the sheriff came to the court-house for the purpose of making the sale, he had a bid of $800 for the entire tract of land, and, without crying any forty separately, he sold the whole to H. Rush, for that sum. The defendant, H. Rush, on the 19th day of February, 1870, conveyed said lands by quitclaim, for the consideration of $1,800, to Robert Armstrong, brother of the defendant, G. N. Armstrong; and upon the same date received a mortgage thereon, to secure a note made by G. N. Armstrong, for $1,800, due January 1, 1873. On the 28th day of November, 1870, Robert Armstrong reconveyed said lands to H. Rush. George N. Armstrong is insolvent. The notes executed by him to plaintiff have passed into the hands of an innocent holder, have been protested for non-payment of interest, and judgment has been obtained thereon against plaintiff as indorser.

The foregoing facts present for our consideration two propositions: First. Is the interest of the plaintiff such as to entitle him to a standing in court in this action? Second. Do the facts disclosed entitle him to the relief sought?

1. JUDICIAL SALE: action: parties.

I. We are of opinion that the plaintiff's interest gives him a standing in court. He has a right to see that the premises mortgaged to secure the notes, upon which he is

collaterally liable as indorsee, are fairly and honestly applied to the satisfaction of such notes. And especially is this true, in view of the fact that the maker of the notes is insolvent, and that judgment has already been obtained thereon against plaintiff as indorser.

II. We are further of opinion that the facts proved entitle the plaintiff to relief. Mistake of material facts is one of the grounds of equitable relief.

In this case the officer was mistaken in supposing that the mortgage covered no other property than that levied upon. Resting under this mistake, he deducted the entire amount of the incumbrance from the property in controversy, thus burdening it with liens to a greater amount than really existed against it. At the sale there was no other bidder present than the attorney of Rush. The land was sold in bulk for $800, without a fair effort to sell the same in parcels, or it was sold in parcels at much less than two-thirds the appraised value, deducting incumbrances..

2.—— sale in bulk: irregular appraisement.

Besides, the circumstances cast great suspicion upon the *bona fides* of G. N. Armstrong and of Rush. No explanation has been offered of the reason why Rush should pay plaintiff his fees to secure his attendance at a remote place, upon the day of sale, as a witness in a cause in which Rush was not a party, and in which plaintiff, after attending, was not even sworn. Nor does it satisfactorily appear why Armstrong should request that the lands — a portion of which had not been properly advertised, should be sold in a body, when the 40 acres of timber, upon which there was no incumbrance, at two-thirds the appraised value, would have realized enough to satisfy the entire judgment.

It is unaccountable, consistently with honesty of purpose, that he should permit the whole two hundred acres, shown by the testimony to be worth $6,000, and incumbered to the extent only of a little over $1,200, to be sold upon a judgment of $259, and to realize only $800, leaving

him still liable upon his notes for the purchase-money. The explanation, we think, is found in what followed this sheriff's sale. Directly thereafter the lands were sold to Robert Armstrong, brother of G. N., for the sum of $1,800, on a credit of three years, for which the note of G. N. was executed, secured by mortgage upon the land.

Since that time, G. N. has continued to reside upon the land, and has offered to sell portions of the same, providing it could be made satisfactory with Rush. Not long before the trial in the court below, he stated that he could sell one forty for $35 per acre, and the fallow, or other forty, he could take $1,000 for, but wanted $35 per acre. From all of which it appears that his interest in the lands has not been entirely divested by the sheriff's sale.

In fact the whole case discloses a dishonest attempt upon the part of Armstrong and Rush to possess themselves, for a merely nominal consideration, of the property in controversy; an attempt, the consummation of which it is the delight of a court of equity to defeat. In our opinion the court erred in dismissing the plaintiff's petition; a decree should have been entered, setting aside the sheriff's deed and sale, and directing a resale of the property.

As Rush paid upon the former sale the sum of $800, the proceeds of the re-sale should be applied to re-imburse him that amount, and the balance applied to the satisfaction of notes given by Armstrong to Whitney.

Reversed.