MILLER & CHANEY BANK OF NEWELL, Appellee, v. O. D. COLLIS et al., Appellants.

No. 40390.

860

January 20, 1931.

*Bailie & Edson* and *E. L. Miller*, for appellants.

*Guy E. Mack*, for appellee.

ALBERT, J.—I. On July 27, 1921, one Frank Libbeous Point was the owner of 95 acres of land situated in Buena Vista County, and on that date, he and his wife, Anna May Point, executed to the Federal Land Bank of Omaha a promissory note for $8,500, securing the same by a mortgage on the aforesaid land. This was an amortization installment loan, running 33 years, with semi-annual payments of $297.50, and said mortgage was duly recorded on the 4th day of August, 1921.

Subsequently, this land was transferred to one Roy L. Gideonsen, and on March 12, 1925, Gideonsen and wife executed to George W. Chaney a promissory note for $6,725.64, securing the same by a mortgage on the real estate. At the September term, 1926, this last-named mortgage was foreclosed. Decree was entered on the 21st day of September, in pursuance of which decree execution sale was had, and the plaintiff became the purchaser thereunder on November 8, 1926. Thereafter, Gideonsen went into bankruptcy, and on September 19, 1927, his trustee in bankruptcy sold and conveyed, by trustee's deed, the aforesaid land to the defendant O. D. Collis, for a consideration in excess of $2,400, and on the next day Collis redeemed from the foreclosure sale in the case of Chaney v. Gideonsen. After the plaintiff herein bought in at the Chaney foreclosure sale, two amortized installments became due on the Federal Land Bank loan, of $297.50 each, one on February 10th, and the other on September 14, 1927. These two installments were taken care of as hereinafter explained, by the plaintiffs, as the holders of the sheriff's certificate under such foreclosure.

On February 27, 1928, the present action was commenced, in which it was sought originally to obtain a personal judgment against Collis, and to foreclose the Federal Land Bank loan mortgage against the land; but plaintiff now asserts that it is not now claiming any personal judgment against Collis. After notice was served on Collis of the present suit, and in January, 1929, he took up the Federal Land Bank loan, and the same was satisfied of record. When the first installment under the Federal Land Bank amortized loan became due, in February, 1927, and the money to take care of the same was furnished by the Miller & Chaney Bank,

the Federal Land Bank of Omaha executed a written instrument, which is evidenced and designated as "Amortized Installment Assignment." This instrument is too long to set out in full, but we have carefully considered the same, and find it to be a written assignment of the $297.50 installment then due. This instrument was duly acknowledged, and might have been, but was not, recorded.

When the second installment became due and was taken care of, on the 24th day of September, 1927, a different writing was made by the Federal Land Bank, which is designated as "Special Receipt for Semiannual Amortized Payment." This instrument acknowledged the receipt of $297.50 paid by the Miller & Chaney Bank, "who makes this payment as a junior lien holder for the purpose of paying amortized installment No. 12," etc. It further provides that the rights of the Miller & Chaney Bank shall forever remain second, junior, and inferior to the rights of the Federal Bank, existing under and by virtue of the mortgage aforesaid, securing the payment of the remainder of said notes. Numerous other provisions, not material here, are then provided for, and the instrument closes with the following paragraph:

"Subject to the above conditions, and subject to the bank's right to its lien and the rights of foreclosure thereunder, * * * the bank consents and agrees that all other subrogation rights shall accrue in favor of the person in whose favor this receipt is issued."

This instrument was also duly acknowledged by the Federal Land Bank of Omaha, but was not recorded.

It is apparent from a careful reading of the latter instrument that the money received from the Miller & Chaney Bank was considered as a payment of this amortized installment. There is nothing in the instrument which makes it similar to the instrument issued when the first $297.50 was turned over by the Miller & Chaney Bank to the Federal Land Bank. Briefly stated, we consider the first instrument as an assignment to the Miller & Chaney Bank of the amortized installment then taken care of, and the second instrument as payment of the amortized installment therein referred to.

The first question urged on our attention is that, when the Miller & Chaney Bank took up these amortized installments, while

they were the holders of the sheriff's certificate under foreclosure,  if they expected to recover the same from the land, they should have proceeded as provided in Chapter 501, Code, 1927, and filed with the district court, clerk, or sheriff an affidavit of the expenditures, the dates thereof, etc., the contention being that this was the plaintiff's exclusive remedy, and that, therefore, the present action cannot be maintained.

We have recently had this question before us in the case of *Jones v. Knutson*, and disposed of the same in an opinion. 212 Iowa —. We there held that the statutory remedy was not exclusive, and did not bar the bringing of an action, under proper circumstances, to exercise a right which has always been recognized at common law under such circumstances. We are content with the ruling in the *Knutson* case, and have no disposition to recede therefrom. We therefore rule this question against the appellant.

Aside from the question just disposed of, the facts in this case are materially different from those in the *Knutson* case, in which latter case the question of innocent purchaser was not involved, as the redemption from the foreclosure of the second mortgage was made by the landowner who gave the mortgage in the first instance; also, the question of notice is involved in the present case, which was not involved in the *Knutson* case.

It is the claim of the plaintiff, as to these two amortized installments, that, on the assignment of the one and the payment of the other, they became subrogated to the rights of the Federal  Land Bank, and were entitled to a pro-rata share of the mortgage security afforded by the mortgage held by the Federal Land Bank; and it is on this foundation that the plaintiff builds its case. It is obvious that, as to the rights of the plaintiff herein, there may be a difference as to these two amortized installments; hence we will treat them separately.

It is well settled, without citation of authority, that, where one pays the debt of another as a pure volunteer, no occasion arises for the application of the doctrine of subrogation. The rationale of the doctrine of subrogation is quite fully set out and

864

discussed in 5 Pomeroy's Equity Jurisprudence (4th Ed.), Section 2343, where it is said:

"When an obligation is discharged by one not primarily liable for it, but who believes himself to be acting either in performance of a legal duty or for the protection of a legal right or at the request of the party ultimately bound, and even in certain other cases, favored by public policy, where none of the above circumstances may be present, the party thus discharging the obligation is entitled in equity to demand, for his reimbursement, and subject to any superior equities, the performance of the original obligation and the application thereto of all securities and collateral rights held by the creditor. The same equity which seeks to prevent the unearned enrichment of one party at the expense of another, by actions for reimbursement, contribution, and exoneration, operates here, by creating a relation somewhat analogous to a constructive trust, in favor of the subrogee, or party making the payment, in all legal rights held by the creditor, and the subrogee may proceed to enforce the trust."

It is further said, in Section 2346:

"The second class of parties entitled to subrogation consists of those who, while not legally bound to pay, yet might suffer loss if the obligation is not discharged, and so pay the debt in self-protection. In this class are included subsequent encumbrancers paying off a prior encumbrance, and owners of property, or of equities or partial interests therein, paying off prior encumbrances."

Iowa has adopted the rule that a transfer of a part of a debt secured by a mortgage operates as a pro-tanto assignment of the mortgage, even though there is no formal assignment of the mort-gage or any part of it. *Grapengether v. Fejervary,* 9 Iowa 163; *Rankin v. Major,* 9 Iowa 297; *Sangster v. Love,* 11 Iowa 580; *Bank of State of Indiana v. Anderson,* 14 Iowa 544; *Walker v. Schreiber,* 47 Iowa 529; 41 Corpus Juris 674, 687.

It must follow, therefore, from the application of this rule, that, as to the first amortized installment, the assignment thereof carried with it *pro tanto* the security of the mortgage, although

no formal assignment was made of the mortgage or any part thereof. But this rule is limited in its operation, as is shown by the cases of *Bank of State of Indiana v. Anderson,* 14 Iowa 544; *Gulick v. Peckenpaugh,* 154 Iowa 380. In the latter case, the rights acquired by the assignee of the pro-tanto protection of the mortgage are treated and discussed as a latent lien, and are not enforcible against bona-fide purchasers without notice. As applied to the facts in this case, the Miller & Chaney Bank, under the assignment of this first installment, acquired a latent lien on the property in question, by reason thereof, which would be good as against all parties except a bona-fide purchaser without notice. The question therefore is: Was Collis a bona-fide purchaser without notice?

Collis purchased from the trustee after both of these amortized payments had been taken care of by the plaintiff, and thereafter also redeemed from the foreclosure sale of the second mortgage. In the *Gulick* case, supra, we held that, where such redemption was made by a third party who paid value without notice, the lien was dead as against him. We there said:

"The defendants [the third party who redeemed] were charged by the record with constructive notice of the existence of the first mortgage and the amount owing on the notes it was given to secure, but not of the existence of latent liens for interest paid by third persons retaining no other interest in or lien on the land."

It is also settled that, where a *purchaser* knew, or should have known, of the assignment, he cannot advantage himself of the failure of the assignee to record. *Bowling v. Cook,* 39 Iowa 200; *Vandercook v. Baker,* 48 Iowa 199; 41 Corpus Juris 701.

We have also said that, where a mortgagee sold or assigned the whole of the debt and then released the mortgage, a good-faith purchaser of the property, without knowledge of the sale or assignment of the debt, is protected. *Bank of State of Indiana v. Anderson,* 14 Iowa 544; *Whitney v. Armstrong,* 32 Iowa 9; *Bowling v. Cook,* 39 Iowa 200; *Parmenter v. Oakley,* 69 Iowa 388; *Daws v. Craig,* 62 Iowa 515; *Livermore v. Maxwell,* 87 Iowa 705; *Jenks v. Shaw,* 99 Iowa 604; *Franklin Sav. Bank v. Colby,* 105 Iowa 424.

There is no showing in the record that Collis made any in-

quiry from the Federal Land Bank at or before he redeemed from the second mortgage foreclosure sale, and so far as notice is concerned, he is only bound by constructive notice of the Federal Land Bank mortgage and its contents. In the *Gulick* case, supra, the court held that, where a third person redeems on a foreclosure sale, he is a purchaser, within the meaning of the rule we are discussing. The question is: At the time Collis redeemed, what constructive notice did he have by reason of the recording of the Federal Land Bank mortgage? The record notified him that the Federal Land Bank had a mortgage on this land for $8,500, payable in 66 semiannual installments on the amortized plan, with the first installment of $297.50 payable February 1, 1922. Of course, the record did not show that any part of the same had ever been paid; but it was sufficient to put him on inquiry to learn from the proper source how much was due thereon at that time, and, had he made such inquiry, he would have learned that the one amortized payment had been assigned to the plaintiff. The other payment in controversy had been paid. As to the one which had been paid, the fact that there was an outstanding latent lien therefor by reason of the doctrine of equity could not be binding on him so long as he knew nothing and learned nothing about it. As to the installment which had been assigned, and of which he would have learned, had he made inquiry, he is bound to take notice thereof, and is, therefore, not an innocent purchaser.

We reach the conclusion, therefore, that, as to the amortized payment which was assigned, the assignment carried with it a pro tanto part of the mortgage securing the same, and the plaintiff was entitled to foreclose said mortgage for the first installment so assigned to him.

But as to the second installment, Collis was an innocent purchaser without notice, and therefore is protected against the same. The holding of the district court should be modified in that the foreclosure of the mortgage, in so far as the second installment was concerned, is erroneous, and should not have been granted.

II. In one division of his answer, the defendant claims that he had a lease with the tenant for this land for one year, expiring March 1, 1928. The tenant had certain corn on the property, on

 which the defendant had a landlord's lien, and plaintiff took said corn and converted it to his own use; and, by way of counterclaim, the defendant asks for $150 for said corn. The lower court held against defendant on the counterclaim, on the theory that the landlord's lien on which the counterclaim was based, expired by operation of law on September 1, 1928, and the counterclaim was not filed until September 26, 1929,—basing his decision on *Nickelson v. Negley & Sherwin*, 71 Iowa 546; *Boyd v. Stipp & Harlan*, 151 Iowa 276; *Ralston Sav. Bank v. Fisher*, 165 Iowa 680.

Each of the above named cases were cases in which the landlord sued the purchaser of grain raised by a tenant on his farm, and the general rule of conversion did not apply. As said in one of the cases, the defendants did not become absolutely liable to the plaintiff when they purchased the wheat. It is true, they purchased subject to the lien, and became liable to the plaintiff if an action should be commenced to enforce it within the time provided by statute. If no such action should be commenced within the time, the lien cannot be enforced. *Nickelson v. Negley & Sherwin*, supra.

Under each of these cases, which are identical with the defense pleaded in the counterclaim, the ruling of the district court was right. The landlord's lien in the present case having expired by operation of law on September 1, 1928, no lien existed thereafter which could be made the basis of a counterclaim. Section 11019, Code, 1927, has no application to the present case. That  section provides for the filing of a counterclaim based on an action against which the statute of limitations has run, but is limited to claims that are barred under Chapter 487, Code, 1927; whereas the landlord's lien statute carries its own limitation,—to wit, six months after the expiration of the term,— and is contained in Chapter 450, Code, 1927. Hence the defendant can gain no advantage from said Section 11019, and there is no provision in the statute authorizing the filing of such counterclaim as is here asserted after the expiration of the

limitation provided in Chapter 450, Code, 1927.—*Modified and affirmed.*

FAVILLE, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.