Reginald L. CROSBY, et al., Plaintiffs,

v.

FIRST BANK OF BEVERLY HILLS,
et al., Defendants.

No. Civ. A. 98–82(RCL).

United States District Court,
District of Columbia.

March 25, 1999.

James Bruce Davis, Bean, Kinney & Korman, P.C., Arlington, VA, for Plaintiffs.

Elizabeth Gieshman Engle, Dingman Labowitz P.C., Alexandria, VA, for Defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case requires the Court to decide what is essentially an issue of District of Columbia mortgage law. The matter comes before the Court on cross-motions for summary judgment by the plaintiffs, defendant Federal Deposit Insurance Corporation (FDIC), and a group of defendants calling themselves the Wilshire defendants (which includes the First Bank of Beverly Hills, Girard Savings Bank, and Wilshire Financial Services a/k/a Wilshire Credit Corporation). Upon consideration of the various cross-motions, the oppositions thereto, the record in this case, the relevant caselaw, and some helpful secondary sources, the Court will grant plaintiffs' motion for summary judgment, deny defendants' two motions, and enter summary judgment in favor of the plaintiffs.

## I. FACTS

The factual background of this case, while undisputed in most respects, is nonetheless complicated, as is often the case when real property, promissory notes, and a mortgage instrument change hands between many parties over a number of years.

■ On July 2, 1991, Lester and Diana Foote[1] borrowed $160,000 from Theodore Roosevelt National Bank. The loan was evidenced by two negotiable promissory

1. The Footes are named as defendants in plaintiffs' complaint. However, they are not adverse to the plaintiffs' current motion for summary judgment, which would primarily affect the rights of the Wilshire defendants and, indirectly, of the FDIC.

notes in the amounts of $90,000 and $70,-000. As security for the entire $160,000 debt,[2] the Footes executed a Deed of Trust[3] on two properties owned by them, one at 1934 11th Street, N.W. and the other at 918 S Street, N.W., both in the District of Columbia. The deed of trust named Gene Fishgrund and C.B. Alonso as trustees; Theodore Roosevelt National Bank was the beneficiary. The deed of trust was properly recorded on July 3, 1991 as Document Number 9100033497.

Within a couple of years thereafter, the Theodore Roosevelt National Bank failed, and the FDIC took over the bank's assets, including the July 2, 1991 promissory notes and deed of trust. In early 1993, the FDIC included both of the promissory notes in a package of real estate loans which it offered for public bid. In May of 1993, however, the FDIC withdrew some 400 loans from the bid package, including that represented by the $70,000 promissory note. The $90,000 note remained in the bid package.

On June 29, 1993, the FDIC successfully sold the loan package to Nomura Asset Capital Corporation.[4] In connection with the sale, the FDIC executed an Assignment of Mortgage/Deed of Trust, which stated:

> FOR VALUE RECEIVED, the undersigned, in its capacity as Receiver, Conservator or Liquidating Agent for Theodore Roosevelt National Bank hereby grants, assigns and transfers to Nomura Asset Capital Corporation all of the undersigned's right, title and interest in and to that certain Deed of Trust/Mortgage listed in Exhibit 1, attached hereto, together with the note or notes described or referred to in the said Deed of Trust/Mortgage, the money due and to become due thereon with interest, and all rights accrued under the said Deed of Trust/Mortgage, without recourse.

Attached to the assignment, and labeled "Exhibit 1 to Assignment of Mortgage/Deed of Trust," was an abstract of the July 2, 1991 deed of trust. The assignment, with attachment, was recorded on November 23, 1993.

At the time of the June 29, 1993 assignment, the FDIC delivered to Nomura the $90,000 promissory note, but it retained the $70,000 note.

On November 1, 1993, Nomura in turn executed an Assignment of Mortgage, transferring its rights in the July 2, 1991 deed of trust to its mortgage loan servicer, FGB Realty Advisors, Inc.[5] This assignment was recorded on January 18, 1994.

About this same time (early 1994), the Footes sold their 11th Street property to Reginald Crosby, one of the plaintiffs in this action. The sale was evidenced by a Deed dated January 14, 1994 and recorded January 26, 1994. Prior to closing, Crosby's settlement attorney contacted FGB to obtain payoff information for the July 2, 1991 deed of trust. An agreement was reached whereby FGB agreed to release the 11th Street property from the deed of trust for payment of $80,000. The $80,000 was paid by certified check from the real

---

**2.** The deed of trust refers explicitly to the Footes' indebtedness to Theodore Roosevelt National Bank "in the total principal sum of ONE HUNDRED SIXTY THOUSAND and NO/100 Dollars ($160,000), as evidenced by TWO certain promissory notes of even date herewith, in the amounts of NINETY THOUSAND and NO/100 Dollars ($90,000) AND SEVENTY THOUSAND and NO/100 Dollars ($70,000)."

**3.** Under the laws of the District of Columbia, a deed of trust is practically equivalent to a mortgage. *See District of Columbia v. May-*

*hew,* 601 A.2d 37, 42 (D.C.1991); *Yasuna v. Miller,* 399 A.2d 68, 71–72 (D.C.1979); *see also* George E. Osborne, *Handbook on the Law of Mortgages* 26–27 (2d ed.1970).

**4.** Like the Footes, Nomura is a named defendant in this action, but is not adverse to any of the current motions for summary judgment.

**5.** FBG is another named defendant in this action that is not directly affected by the cross-motions currently under consideration.

estate escrow account of Crosby's attorney, and it was received by FGB on January 24th or 25th, 1994. The agreed-upon partial release, however, was never put in writing. FGB sold the July 2, 1991 deed of trust to Fairbanks Capital Corporation shortly after receipt of the $80,000.

Approximately one year later, the Footes sold the S Street property to Sheila Johnson, predecessor in interest to plaintiffs Alemgena Dawit, Daniel Asrat, and Berhane Kifle.[6] The sale was evidenced by a deed dated February 17, 1995 and recorded on February 24, 1995.

Johnson's settlement was conducted by plaintiff Maximum Title Group, Inc. Prior to closing, Maximum Title obtained from the Footes a letter from Fairbanks Capital stating payoff information. Maximum Title also obtained a title search showing the July 2, 1991 deed of trust and indicating that it had been assigned to FGB.[7] When Maximum Title contacted FGB, it was informed that FGB had sold the deed of trust to Fairbanks. Maximum Title then contacted Fairbanks directly, and Fairbanks responded with a fax stating that the updated payoff amount was $37,836.12 and encouraging Maximum Title to "[p]lease forward payoff funds to Fairbanks Capital Corp. and I will make sure the collateral is released." At the closing on February 17, 1995, Maximum Title paid $37,878.12 in exchange for release of the July 2, 1993 deed of trust.

At the time of the Johnson closing, Fairbanks had actually transferred the July 2, 1993 deed of trust back to FGB. Fairbanks forwarded the payoff monies to FGB, who in turn sent a Deed of Reconveyance, dated October 18, 1995, to the Footes purporting to release the July 2, 1991 deed of trust. The Reconveyance stated:

> "WHEREAS, on JULY 2, 1991, a certain Deed of Trust was executed by LESTER FOOTE AND DIANA C.M. FOOTE, HUSBAND AND WIFE, Grantor(s), to GENE FISCHGRUND AND C.B. ALONSO, TRUSTEES, THEODORE ROOSEVELT NATIONAL BANK, Beneficiary, for the sum of ONE HUNDRED SIXTY THOUSAND DOLLARS, ...which said Deed of Trust is recorded as DOCUMENT NUMBER 9100033497, of the records of the DISTRICT OF COLUMBIA.
>
> WHEREAS, the indebtedness secured by said Deed of Trust has been paid in full: NOW THEREFORE, FGB Realty Advisors, Inc...., the legal and equitable owner and holder of said Deed of Trust does hereby reconvey, without warranty, to the person or persons legally entitled thereto, the estate, title and interest now held by it under said Deed of Trust ..."

On April 19, 1995, the FDIC sold the $70,000 promissory note[8] to defendants First Bank of Beverly Hills and Girard Savings Bank. The FDIC endorsed the note to defendant Wilshire Financial Service Group, as servicing agent for First Bank of Beverly Hills and Girard Savings Bank. The FDIC also appears to have executed an assignment transferring the July 2, 1991 deed of trust to either Wilshire or First Bank of Beverly Hills and Girard Savings Bank, a copy of which does not appear in the record, although it is

---

6. The chain of title from Johnson to the current plaintiffs is as follows: In 1995, Johnson executed a deed of trust on the property to secure a loan from Kislak Mortgage Corporation. Kislak assigned the loan and mortgage to Residential Funding Corporation, which foreclosed on the deed of trust and acquired title to the property when Johnson defaulted on the loan. In 1996, Residential Funding Corporation conveyed the property to Dawit, Kifle, and Asrat. *See* Pl.'s Stmt. of Mat. Facts at 8 n.17.

7. The title search did not identify the July 2, 1991 deed of trust as securing more than one promissory note, nor did it refer to the assignment from FDIC to Nomura (only the assignment from Nomura to FGB).

8. At the time of this sale, the $70,000 note was in default.

referenced in another document as being dated September 15, 1997 and recorded October 1, 1997 as Document 9700064306.

The $70,000 note has never been satisfied, and the Wilshire parties have given notice of their intention to foreclose on the July 2, 1991 deed of trust, which they contend still secures the $70,000 promissory note and still applies to both the 11th Street and S Street properties. The plaintiffs filed this action to prevent such foreclosure and to clear title to the two properties.

Plaintiffs have now filed a motion for summary judgment, asking the Court to (1) enter judgment against the Wilshire defendants and the trustees of the July 2, 1991 deed of trust, (2) divest the trustees of any right or title under that instrument, and (3) direct the trustees to execute a full release, returning legal title to the current owners of the two properties. The FDIC has filed a cross-motion for summary judgment asking the Court to dismiss it as a defendant, and the Wilshire parties have filed a separate cross-motion for summary judgment requesting that the Court declare their rights under the July 2, 1991 deed of trust to be "ongoing and unchanged" and that the Court appoint substitute trustees so that the Wilshire parties may pursue all available means to recover the balance of the $70,000 note.

## II. LAW AND APPLICATION

### A. *Standard for Summary Judgment*

As set forth in Federal Rule of Civil Procedure 56(c), summary judgment shall be granted on motion of a party if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." From the parties' statements of undisputed facts, it is apparent that the facts underlying this action are undisputed. Where the parties disagree—such as whether the FDIC's June 29, 1993 assignment of the deed of trust transferred all of FDIC's interest in the deed of

trust or only a partial interest—the dispute is of a legal, rather than factual, nature. Consequently, because there are no genuine issues of material fact and the plaintiffs have demonstrated that they are entitled to judgment as a matter of law, summary judgment will be entered in favor of the plaintiffs, for the reasons set forth below.

### B. *The Effect of the 1993 and 1997 Assignments*

Plaintiffs offer the Court several theories to support their claims against the FDIC and the Wilshire defendants. However, the Court need address only the first, because it is dispositive of the issues before the Court on the current motions for summary judgment.

On page eleven of their memorandum in support of summary judgment, plaintiffs argue that

> FDIC's Assignment of Mortgage/Deed of Trust to Nomura, recorded in 1993, extinguished 'all of [FDIC's] right, title and interest' in and to the Theodore Roosevelt Deed of Trust. After the 1993 assignment to Nomura, FDIC owned no further interest in the Theodore Roosevelt Deed of Trust. Consequently, FDIC's 1997 Assignment of Mortgage/Deed of Trust was wholly ineffective to transfer any interest in the Theodore Roosevelt Deed of Trust to Beverly Hills or Girard.

If this is in fact the case, then Court will have no occasion to visit the plaintiffs' estoppel arguments. After consideration of the arguments offered by both sides, the Court finds that this is the only permissible interpretation of the June 29, 1993 assignment, and that plaintiffs are therefore entitled to summary judgment.

There is no dispute, of course, over the language of the June 29, 1993 assignment of the deed of trust. The assignment instrument stated quite clearly:

> FOR VALUE RECEIVED, the undersigned, in its capacity as Receiver, Con-

servator or Liquidating Agent for Theodore Roosevelt National Bank hereby grants, assigns and transfers to Nomura Asset Capital Corporation *all of the undersigned's right, title and interest* in and to that certain Deed of Trust/Mortgage listed in Exhibit 1, attached hereto, *together with the note or notes described or referred to in the said Deed of Trust/Mortgage,* the money due and to become due thereon with interest, and all rights accrued under the said Deed of Trust/Mortgage, without recourse.

(Emphasis added.) The plain language of the assignment leaves no doubt as to its effect—it represents a transfer of *all* of FDIC's interest in the July 2, 1991 deed of trust.[9] The defendants have offered no persuasive reason why the Court should invent a legal fiction that the assignment in fact had another effect from that evident on its face.

The Wilshire defendants argue, without citation to any authority, that the transfer of the secured $90,000 note cannot remove the mortgage interest from the $70,000 note secured by the same deed of trust; instead they argue that any assignment of a mortgage interest along with a note was an assignment of the mortgage interest *"as to that single note"* only. *See* Mem. in Supp. of Wilshire M.S.J. at 4. This argument appears to be based on the recognized principle that a mortgage is deemed to follow its underlying obligation. *See Restatement (Third) of Property: Mortgages* § 5.4 cmt. a ("The essential premise of this section is that it is nearly always sensible to keep the mortgage and the right of enforcement of the obligation it secures in the hands of the same person."). Although the Court could find no District of Columbia, Virginia, or Maryland case on point, the weight of caselaw from around the country during this century also supports the view that, generally, assignment of an obligation secured by a mortgage operates to assign a pro tanto portion of the mortgage interest. *See Equitable Trust Co. v. Milton Realty Co.,* 263 Mich. 673, 676, 249 N.W. 30 (Mich.1933); *In re McCurdy's Estate,* 303 Pa. 453, 459, 154 A. 707 (Pa.1931); *Miller & Chaney Bank of Newell v. Collis,* 211 Iowa 859, 234 N.W. 550, 553 (1931); *Whitney v. Eichner et al.,* 204 Iowa 1178, 216 N.W. 625, 626 (1927). Each of these cases, however, involved circumstances in which an obligation was transferred without mention of transferring the corresponding security interest. In effect, these courts implied a transfer of a mortgage interest. That is very different from finding an implied *limitation* on an explicit transfer of a mortgage interest, as we have here. The Court knows of no principle or premise supporting the view that a holder of two obligations secured by the same mortgage may not transfer the entirety of the mortgage interest with just one of the underlying obligations, leaving the second obligation unsecured. It may rarely be wise to do so, but it is not prohibited. Absent some rule prohibiting the explicit effect of the June 29, 1993 assignment instrument, the Court does not see how the plain meaning of the instrument's language can be swept aside in favor of what defendants, years later, claim to have intended. Therefore, the Court finds that the June 29, 1993 assignment of the deed of trust did in fact mean what it said; the assignment conveyed to Nomura the entire mortgage interest held by FDIC.

One consequence of this holding, of course, is that the FDIC transferred to the Wilshire defendants in 1995 an unsecured $70,000 promissory note, which also appears to have been in default. This will obviously affect the rights of the Wilshire defendants, in that they may not foreclose

---

9. By the terms of the assignment, it would appear that the $70,000 loan was also transferred to Nomura. Such a result may be barred by the law of negotiable instruments. *See* D.C.Code Ann. § 28:3–203 (negotiable instrument is transferred upon delivery). Those laws, of course, do not apply to the nonnegotiable deed of trust and thus do not affect the Court's holding as to the effect of the assignment on the deed of trust.

on plaintiffs' properties to satisfy the balance of the unpaid $70,000 obligation; their remedy for this unenviable circumstance, however, must lie with the FDIC, rather than with the plaintiffs. It was the FDIC, after all, that drafted and executed an assignment instrument that was not in step with what it now claims to have been its intentions. The ramifications of this mistake should be borne by the party at fault—equity requires as much.

### III. CONCLUSION

For the reasons set forth above, the Court finds that no genuine issues of material fact remain and that the plaintiffs are entitled to judgment as a matter of law, and the Court will enter judgment in their favor against the FDIC and the Wilshire defendants. The deed of trust will be declared extinguished by operation of law.

